UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
: 
UNITED STATES OF AMERICA,            :  ECF Case
:
v.                                   :  No. 16 Cr. 467 (ALC)
:
NORMAN SEABROOK and                  :  **DECLARATION IN SUPPORT OF**
MURRAY HUBERFELD,                    :  **MURRAY HUBERFELD'S**
:  **PRETRIAL MOTIONS**
Defendants.              :
:
:
:
------------------------------------------------------- X

     Henry E. Mazurek, declares under penalty of perjury that the foregoing is true and correct:

     1.     I am an attorney duly admitted to practice in the State of New York and before this Court. I am a partner in the law firm Clayman & Rosenberg, and my office is located at 305 Madison Avenue, New York, New York, 10166. Along with the law firm Winston & Strawn, I represent Murray Huberfeld in the above-captioned matter, and, as such, am fully familiar with the facts and circumstances of this case.

     2.     This Declaration and the Memorandum of Law submitted herewith are respectfully submitted in support of Murray Huberfeld's pretrial motions. The information contained herein is based upon my review of discovery and other records relevant to the litigation of issues raised in these motions, or otherwise upon information and belief.

     3.     By letter dated June 20, 2017, undersigned counsel made multiple demands for early production of *Brady/Giglio* material from the government relating to Jona Rechnitz, who is upon information and belief, referred to as CW-1 in the Indictment.

4. The government declined to provide this information, and instead offered only to produce contact and counsel information for investors in the Nissen ticket business, who are known to the government.

5. In its opposition to these motions, the government indicated that it "disputes the defense characterization of Rechnitz as an 'apparent co-conspirator' of Nissen." (Opp. at 39.)

6. The government also indicated in its response that the defense erroneously relied on "two media articles that do not support such a characterization." (Opp. at 39.)

7. This declaration identifies several additional sources of information, including the government's own Rule 16 discovery produced to defense counsel to date, all of which provide evidence to support the defense claim that the government is in possession of evidence that Rechnitz knowingly participated in a fraudulent scheme with Jason Nissen to defraud investors in Nissen's ticket business out of their money and property by false pretense, material misstatements of fact, and other devices. To undersigned counsel, this information presents *prima facie* evidence that Rechnitz was an "apparent co-conspirator" with Nissen in his scheme to defraud investors.

8. The information below is inconsistent and contrary to the government's apparent conclusion that Rechnitz was not a knowing participant in the Nissen ticket fraud, *see United States v. Jason Nissen,* 17 Mag. 4096 (S.D.N.Y.). We submit that the showing below creates material issues of disputed fact about whether the government has faithfully carried out the terms of its cooperation agreement with Rechnitz under governing principles of implied good faith and fair dealing. Accordingly, we seek the relief requested in the attached motions and an evidentiary hearing to resolve all disputed issues of fact.

9. In or about April 2016, Jona Rechnitz began cooperating with federal law enforcement authorities, including attending multiple proffer sessions.

10. On June 6, 2016, Jona Rechnitz pleaded guilty, pursuant to a cooperation agreement with the government, to a one-count Information charging conspiracy to commit honest services fraud. Specifically, the information charged Rechnitz with conspiring to provide "financial and personal benefits and political contributions to public officials, including law enforcement officials, in exchange for official action as requested by Rechnitz and others…" (*See* Information at 2, *United States v. Jona Rechnitz*, 16 Cr. 389 (S.D.N.Y. June 6, 2016), attached hereto as Attachment A.)[1] The only specified object of the charged conspiracy accuses Rechnitz and "others known and unknown" with having "facilitated the payment of approximately $60,000 to [a Corrections Officers' Benevolent Association ("COBA")] Official on behalf of a hedge fund operator in exchange for the COBA Official's direction of an investment of union funds in the hedge fund…" (*Id.* at 3.)

11. Upon information and belief, in or about June 2016, Jason Nissen was interviewed by federal law enforcement agents and prosecutors relating to matters involving Jona Rechnitz. Upon further information and belief, Nissen was not questioned at this time about his participation in a scheme to defraud investors in his ticket business, or Rechnitz's knowledge and participation in this scheme, presumably because Rechnitz never disclosed his own participation in the scheme prior to pleading guilty.

12. On May 30, 2017, Jason Nissen was charged by criminal complaint (*see* Complaint, *United States v. Nissen*, 17 Mag. 4096, attached hereto as Attachment B), in this district with having committed a $70 million dollar Ponzi scheme involving investments in bulk

---

[1] The defense does not attach here the linesheets or transcripts of telephone calls, which are subject to the Court's protective order. These materials will be made available upon the Court's request.

3

tickets to high end sporting and other entertainment events, beginning in 2015 and continuing through May 2017.  Upon information and belief, Nissen voluntarily reported his commission of investor fraud in the ticket business prior to his appearance in Court.  It is believed that Nissen also has been interviewed by law enforcement and federal prosecutors about his participation in the charged investor fraud, and also was questioned about his knowledge of Rechnitz's participation in the ticket fraud scheme.  Nissen is also a potential witness for the government in this case, involving an invoice for New York Knicks tickets purportedly caused to be sent by Rechnitz to Huberfeld.  Rechnitz apparently claims that this invoice was sent to Huberfeld as a cover to reimburse Rechnitz for a $60,000 alleged "kickback" payment to Seabrook.

13.     Information reviewed by the defense, and produced by the government as Rule 16 discovery in the form of wiretap recordings and seized email correspondence, indicates that Rechnitz repeatedly made material false statements to individuals who were solicited to invest in the Nissen ticket business to induce them to invest millions of dollars with Nissen.  Other materials, including bank statements, revealed that Rechnitz personally profited at least between $6 and $10 million dollars from hidden commissions for securing these investments based on false statements.

14.     Conversations between Rechnitz and Nissen recorded on the government's wiretap of Rechnitz's phone indicate Rechnitz repeatedly lied to induce investors to give Nissen money. For example, Rechnitz:  (1) falsely reported to investors that he was investing millions of dollars of his own money; (2) intentionally concealed that he was paid a commission of ten percent of the amounts he secured for investment, which was paid regardless of whether the investments produced profits, and that he was acting only as an unregistered broker and not fellow investor in the business; and (3) lied to investors he solicited, and directed Nissen to lie,

4

about the actual cost of the ticket investments, then divided the fraudulently induced excessive investment amounts between him and Nissen. Upon information and belief, Rechnitz personally earned $6 to $10 million dollars based on these fraudulent statements.

15. The government is also in possession of transcripts of recorded conversations between Nissen and some of his investors in the ticket business. Investors secretly recorded their conversation with Nissen on or about May 8, 2017, because of earlier admissions by Nissen of parts of his fraudulent scheme. The transcript of this meeting was attached to a civil lawsuit filed by these investors and others on June 1, 2017.[2] Nissen's statements in the May 8, 2017 recording, at a time he did not know he was being recorded, are further evidence of Rechnitz's knowing participation in the Nissen fraud scheme:

　　a. Nissen explained that Rechnitz directed the amount of investors' return on their investments, regardless of the actual profit. Nissen explained in the recording that: "What [Rechnitz] did was 2.5% per month. Even though he said you were partners, he was giving you 2.5% a month, that's what he was doing…. Jona would come to you and say 'you made this.' It was 2.5% a month." (*See* May 8, 2017 Nissen Transcript, attached hereto as Attachment C, at 27);

　　b. Rechnitz "used [Nissen] as a vehicle to take money from" other investors (*id.* at 28);

　　c. Rechnitz "never invested a dollar," (*id.*), but obtained "six to eight million dollars" from Nissen. (*id.* at 29);

---

[2] Two transcripts, May 7 and 8, were referenced in the criminal Complaint against Nissen, filed May 30, 2017, but were not attached to the complaint. The portions of the May 8, 2017 transcript discussed herein were not specifically referenced in the Nissen complaint.

      d. Nissen paid Rechnitz his secret commissions both by check and by paying his credit card. (*Id.*) But after Rechnitz knew he was being investigated by federal authorities, Nissen agreed to make all payments to a credit card that Rechnitz was using, presumably to leave less of a paper trial. ("But then when [Rechnitz] had his problem I told him I'm not gonna do it anymore and I was just paying his Amex. Eighty thousand a month, whatever it was.") (*Id.*)

      e. Rechnitz's investors – for whom he received millions of dollars of commissions from Nissen – ended up profiting from their "ticket investments," while other investors in Nissen's business lost tens of millions of dollars. (*Id.* at 45-47, 49.)

16. The government has declined to produce a copy of its cooperation agreement with Rechnitz until two weeks before trial. We know, however, that Rechnitz did not plead guilty to the fraudulent investor scheme related to Nissen's ticket business, and the government in its response to these motions disputed Rechnitz's role as an "apparent co-conspirator" with Nissen in this scheme. (Opp. at 39.) Thus, despite the information cited above about Rechnitz's intentional role in the ticket business fraud, the government maintains its position that Rechnitz is in compliance with the terms of his cooperation agreement by presumably denying his participation in a fraudulent investment scheme with Nissen.

17. Because Rechnitz's implied denial of his knowing participation in investment fraud with Nissen is contradicted by substantial evidence, this Court should require an evidentiary hearing to resolve issues of disputed fact regarding the government's decision to preserve its cooperation agreement with Rechnitz despite considerable evidence that Rechnitz is

6

in material breach of that agreement for failing completely and truthfully to disclose his participation in criminal conduct.

18. Attached hereto as Attachment D is the New York Department of State Division of Corporations Entity Information for the Correction Officers' Benevolent Association.

Dated:  New York, New York
        August 7, 2017                          /s/ *Henry E. Mazurek*
                                                Henry E. Mazurek
                                                Clayman & Rosenberg LLP
                                                305 Madison Avenue
                                                New York, New York 10165

                                                *Counsel For Defendant*
                                                *Murray Huberfeld*