HB8TSEA1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          16 Cr. 467 ALC

NORMAN SEABROOK AND MURRAY HUBERFELD,

            Defendants.

------------------------------x

                                        November 8, 2017
                                        9:00 a.m.


Before:

                HON. ANDREW L. CARTER, JR.,

                                        District Judge
                                         and a jury



                        APPEARANCES

JOON H. KIM,
        United States Attorney for the
        Southern District of New York
KAN MIN NAWADAY,
MARTIN S. BELL,
RUSSELL CAPONE,
        Assistant United States Attorneys

1992

HB8TSEA1

```
 1
 2                        APPEARANCES (Continued)
 3
 4   BRACEWELL, LLP,
          Attorneys for defendant Seabrook
 5   BY:  PAUL LEWIS SHECHTMAN, Esq.
          MARGARET EMMA LYNAUGH, Esq.
 6               Of counsel
 7
 8   MAZUREK LIPTON, LLP
          Attorneys for defendant Huberfeld
 9   BY:  HENRY EDWARD MAZUREK, Esq.
          EVAN LOREN LIPTON, Esq.
10               Of counsel
11
12   Also Present:
          BARD HUBBARD, Special Agent FBI
13        YOLANDA BUSTILLO, Paralegal USAO
          AUGUSTA GRANQUIST, Paralegal
14
15
16
17            (In open court, jury not present)
18            THE COURT:  Everyone here?  Are all the parties here?
19            MR. MAZUREK:  Mr. Huberfeld I think is stuck in an
20   accident.  He's not in an accident, but he's been delayed
21   because of an accident in front of the West Side Highway.
22            THE COURT:  Do you have an estimated time as to when
23   he might arrive?
24            MR. MAZUREK:  He said he's at Canal Street right now.
25            THE COURT:  Okay.  Thanks.  So counsel, let's discuss
```

1    some general housekeeping matters.

2              Counsel for Mr. Huberfeld, do you waive his appearance

3    for this?

4              MR. MAZUREK:  I do.

5              THE COURT:  We'll charge the jury this morning.  First

6    of all, is there anything that counsel wishes to raise?

7              MR. BELL:  No, your Honor.

8              MR. MAZUREK:  No, your Honor.

9              MR. SCHECHTMAN:  Nothing.

10             THE COURT:  So there are a few typos and little things

11   like that in the jury instructions that we have, we didn't

12   receive anything else from counsel, but I will make these edits

13   on the fly.  There may be other edits that need to be made

14   while making them on the fly, so we'll wait until we made all

15   the edits before we actually print out the final copy for the

16   jurors.  Let me let counsel know of the things that we have

17   seen so far that we need this change, and they're pretty minor.

18             On page 10 of the instructions, the second paragraph,

19   reasonable doubt instruction, the fourth sentence in the second

20   paragraph, it is doubt that a reasonable person has.  I think

21   that should be -- the article "a" should be included there

22   because the next sentence also says it is a doubt, and should

23   be a reasonable doubt, so a doubt.

24             Any objection, counsel for either side?

25             MR. MAZUREK:  No.

1	　　　　MR. NAWADAY:  No, your Honor.

2	　　　　THE COURT:  Then on page 11, the first full paragraph,

3	the second -- I guess the third sentence says commit honest

4	services fraud against the Corrections Officers Benevolent

5	Association, there's an extra S on "Correction," I'll take that

6	off.  Counsel have any objection to that?

7	　　　　MR. BELL:  No, your Honor.

8	　　　　MR. MAZUREK:  No.

9	　　　　MS. LYNAUGH:  None.

10	　　　　THE COURT:  Then other really, really minor things.

11	On page 12 we need to conform the dashes, there's a single dash

12	then a double dash on the bottom of page 12, the last

13	paragraph, we'll make that small correction.

14	　　　　Something elsewhere there's a pronoun missing, page

15	15, the penultimate paragraph, the last full paragraph the one

16	that starts, "The commission of a kickback," the last sentence

17	says "Laws criminalizng kickback payments are designed to

18	prevent quid pro quo corruption where the union official has a

19	duty of loyalty to his membership exchanges his," it seems to

20	me there should be a "who" after "official," so where the union

21	official who had a duty of loyalty to his membership exchanges

22	his official action for something of value, unless counsel has

23	another suggestion.

24	　　　　Counsel, any thoughts on that?

25	　　　　MR. BELL:  That seems right, your Honor.

1          MR. MAZUREK:  That's fine.

2          MS. LYNAUGH:  We agree.

3          THE COURT:  I didn't see anything else yet.  Perhaps

4    while we're waiting it helps for counsel to go ahead and go

5    through, read through the rest of the instructions sort of with

6    a fine tooth comb and see if there's any other typos or things

7    like that so we could fix those and make those adjustments.

8          Anything else we need to discuss right now while we're

9    waiting for the jurors, counsel for Mr. Huberfeld?

10         MR. MAZUREK:  Your Honor, we saw in the draft verdict

11   form and it looks fine to us.

12         THE COURT:  Okay.  Counsel for Mr. Seabrook?

13         MS. LYNAUGH:  Same here.

14         THE COURT:  Counsel for the government?

15         MR. BELL:  Same as well.

16         THE COURT:  We printed out a copy, since there are

17   several drafts, make sure that's the copy that's good with

18   everyone, that's right form of verdict form, and we will mark

19   that as Court Exhibit 2.  Court Exhibit 1 will be the jury

20   instructions once we have those finalized, but let's have

21   counsel inspect that and make sure we're all good with that.

22         The other thing is when I read the jury instructions,

23   that's not going to be particularly riveting for the jury.

24   It's usually not particularly enjoyable listening to anyone

25   read unless it's Judi Dench or Morgan Freeman and I am neither

1  of those people, but counsel should be aware, to try to keep

2  the jurors perhaps from snoring during the reading I will

3  attempt to change the speed at which I speak and I may change

4  the pitch of my voice.  So, counsel, don't be alarmed, nothing

5  has happened to me.

6           MR. MAZUREK:  Judge, I want to inform the Court that

7  Mr. Lipton is at another court appearance.  If he arrives

8  during the reading of the instructions do you want him to wait

9  outside until you're finishing or could he come in?

10          THE COURT:  He could come in as long as he doesn't

11  make a grand entrance, that's fine.

12          MR. MAZUREK:  I'll let him know that.

13          THE COURT:  And again, the plan is what I will do is

14  read the instructions to the jury, then perhaps we'll send the

15  jury into the jury room and they'll probably need a break, and

16  I'll confer with counsel to see if there's anything that I

17  misread or omitted, if so, bring the jury back and correct

18  that.

19          If not, it will be my intention to perhaps ask my

20  deputy then to bring the alternate jurors out ask them to bring

21  their belongings with them and then tell them that they are

22  free to leave the courtroom but they're not excused, and I will

23  still give them the same instructions that all the other jurors

24  have had and tell them that we may need to reach them.

25          Any objection to that?

1          MR. SCHECHTMAN:  No, Judge.

2          MR. NAWADAY:  No.

3          THE COURT:  I guess before we do that we'll have to

4   have the marshal sworn, but we do that, bring the alternates

5   out, let them go from the jury and the jurors will start

6   deliberating.

7          My plan is to give counsel an opportunity to get some

8   lunch if you want to that.  So we're going to see if we could

9   get lunch delivered to the jury at like 12:30, 12:45, only

10  because the jury may decide to stop at 2:30 with the

11  understanding if the jury has any notes during that 12:30 to

12  1:30 period of time they will have to wait until we get back.

13         Counsel fine with that?  I didn't want to do a 1:00 to

14  2:00 because if the jury wants to leave as 2:30 and they have a

15  bunch of notes that come over the lunch break, I don't want to

16  delay.

17         Any objection to that?

18         MR. BELL:  No, your Honor.

19         MR. MAZUREK:  No.

20         MS. LYNAUGH:  None.

21         THE COURT:  Okay.  See you soon.  Counsel go through

22  the rest of the instructions and see if there's anything else

23  that needs to be corrected.

24         (Recess taken)

25         THE COURT:  The jury is all here.  My deputy will

1   bring the jury in.

2           And counsel, so you know, I don't plan to read the

3   captions, I will just read the instructions.  I'll read the

4   captions when I get to the elements of the offense.

5           (Jury present)

6           THE COURT:  Good morning, welcome back.  I will now

7   give you the instructions on the law.  Now you don't need it

8   take notes for this because -- again, you don't need to take

9   notes for this because we're going to give a copy of these jury

10  instructions to you when you go to deliberate.  But it's

11  important that you listen.

12          It is my duty at this point to instruct you on the

13  law.  It is your duty to accept these instructions and apply

14  them to the facts as you determine them.  Regardless of any

15  opinion you may have as to what the law may be or should be, it

16  would violate your duty to base a verdict on any other view of

17  the law than the one I give you.  If an attorney has stated a

18  legal principle differently than I state it to you, it is my

19  instructions that you must follow.

20          You should not single out any instruction but should

21  consider my instructions as a whole when you retire to

22  deliberate the verdict.  You may take a copy of these

23  instructions with you into the jury room.

24          Your role is to decide the facts of the case.  You are

25  the sole and exclusive judges of the facts.  You must determine

1   the facts based solely on the evidence received in this trial.

2   In determining the facts, you must rely upon your own

3   recollection of the evidence.  What the lawyers have said, for

4   instance, in opening statements, in closing arguments, in

5   objections or in questions, is not evidence.  You should bear

6   in mind particularly that a question put to a witness is not

7   evidence, it is only the answer that is evidence.

8           The lawyers' arguments are intended to convince you to

9   draw certain conclusions from the evidence or lack of evidence.

10  Those arguments important.  You should weigh and evaluate them

11  carefully.  But you must not confuse them with the evidence.

12  As to what the evidence was, it is your recollection that

13  governs, not the statements of the lawyers.

14          You should draw no inference or conclusion for or

15  against any party by reason of the lawyers making objections or

16  my ruling on those objections.  The attorneys have a duty to

17  make legal objections when they think that such objections are

18  appropriate.  You should not be swayed against the government

19  or the defendants simply because counsel for either side has

20  chosen to make an objection.  Similarly, statements made by

21  counsel when arguing the admissibility of evidence are not to

22  be considered as evidence.

23          I remind you also that nothing that I have said during

24  the trial or during these instructions is evidence.  Similarly,

25  the rulings I have made during the trial are not any indication

1    of my views of what your decision should be.  My rulings were

2    based solely on issues of law.  Do not concern yourselves with

3    what was said at sidebar conferences or during my discussions

4    with counsel.  Those discussions related to rulings of law and

5    not to matters of fact.

6          The law recognizes two types of evidence, direct and

7    circumstantial.  You may rely on either type of evidence.

8    Direct evidence is evidence that, if believed, directly shows a

9    fact.  For instance, one kind of direct evidence is a witness's

10   testimony about something she knows by virtue of her own

11   senses, something the witness has seen, felt, touched or heard.

12   Direct evidence may also be in the form of an exhibit.

13         Circumstantial evidence is a chain of circumstances

14   that indirectly proves a fact.  Stated differently,

15   circumstantial evidence is a fact or series of facts that, if

16   believed, leads to a conclusion that another fact exists.  For

17   example, if a witness testified that she saw it raining outside

18   and you believed her, that would be direct evidence it was

19   raining.  If someone walked into the courtroom wearing a

20   raincoat covered with drops of water and carrying a wet

21   umbrella, that would be circumstantial evidence from which you

22   could conclude it was raining.

23         Circumstantial evidence is as valuable as direct

24   evidence.  The law makes no distinction between them.  There

25   are times when different inferences may be drawn from the

1    facts, whether they are proven by direct or circumstantial

2    evidence.  The government asks you to draw one set of

3    inferences.  The defendants ask you to draw another.  It is for

4    you, and you alone, to decide what inferences you will draw.

5          Much of the evidence you heard was presented to you in

6    the form of testimony from witnesses.  First, let me remind you

7    that it is for you and you alone to decide the credibility of

8    witnesses who appeared here and the weight their evidence

9    deserves.  Your determination of the credibility of a witness

10   largely depends upon the impression the witness made upon you

11   as to whether or not he or she was giving an accurate version

12   of what occurred.

13         The degree of credit given to a witness should be

14   determined by his or her demeanor, relationship to the

15   controversy and the parties, bias or impartiality, the

16   reasonableness of the witness's statement, the strength or

17   weakness of the witness's recollection viewed in light of all

18   other testimony, and the attendant circumstances in the case.

19   In passing upon the credibility of a witness, you may also take

20   into account any inconsistencies or contradictions as to

21   material matters in his or her testimony.

22         You may consider whether a witness had or did not have

23   a motive to lie.  If a witness had a motive to lie, you may

24   consider whether and to what extent, if any, that motive

25   affected the truthfulness of that witness's testimony.  If a

1    witness did not have a motive to lie, you may consider that as

2    well in evaluating the witness's truthfulness.

3            You have heard evidence during the trial that the

4    witnesses have discussed the facts of the case and their

5    testimony with the lawyers before the witnesses appeared in

6    court.  There is nothing unusual or improper about a witness

7    meeting with lawyers before testifying so that the witness

8    could be aware of the subjects she will be questioned about.

9    The weight you give to the fact or the nature of the witness's

10   preparation for her testimony and what inferences you draw from

11   such preparation are matters completely within your discretion.

12           If you find that any witness has willfully testified

13   falsely as to any material fact, you have the right to reject

14   the testimony of that witness in its entirety.  On the other

15   hand, even if you find that a witness has testified falsely

16   about one matter, you may reject as false that portion of his

17   or her testimony and accept as true any other portion of his or

18   her testimony.  A witness may be inaccurate, contradictory, or

19   even untruthful in some aspects, and yet be truthful and

20   entirely credible in other aspects of his or her testimony.

21           The ultimate question for you to decide in passing

22   upon credibility is:  Did the witness tell the truth before

23   you?  It is for you to say whether his or her testimony at

24   trial is true in whole or in part in light of the witness's

25   demeanor, explanations, and all of the evidence in the case.

1          In evaluating the credibility of the witnesses, you

2     should take into account any evidence that the witness who

3     testified may benefit in some way from the outcome of this

4     case.  Such an interest in the outcome creates a motive to

5     testify falsely and may sway the witness to testify in a way

6     that advances his or her own interest.  Therefore, if you find

7     that any witnesses whose testimony you are considering may have

8     an interest in the outcome of this trial, then you should bear

9     that factor in mind when evaluating his or her credibility and

10    accept it with great care.

11         This is not to suggest that every witness who has an

12    interest in the outcome of a case will testify falsely.  It is

13    for you to decide to what extent, if at all, the witness's

14    interest has affected or colored his or her testimony.

15         You have heard evidence that at some earlier time

16    witnesses have said or done something that counsel argues is

17    inconsistent with their trial testimony.  Evidence of a prior

18    inconsistent statement was placed before you only for the

19    purpose of helping you decide whether to believe the testimony

20    of a witness who may have contradicted a prior statement he or

21    she made.  If you find that the witness made an earlier

22    statement that conflicts with the witness's testimony, you may

23    consider that fact when deciding how much of the witness's

24    testimony, if any, to believe.

25         In making this determination, you may consider whether

1    the witness purposely made a false statement or whether it was

2    an innocent mistake; whether the inconsistency concerns an

3    important fact or whether it had to do with a small detail;

4    whether the witness had an explanation for the inconsistency,

5    and whether that explanation appealed to your common sense.

6         It is exclusively your duty, based upon all the

7    evidence and your own good judgment, to determine whether the

8    prior statement was inconsistent, and if so, how much, if any,

9    weight to give to the inconsistent statement in determining

10   whether to believe all, or part, of the witness's testimony.

11        Some of you took notes periodically throughout this

12   trial.  I want to emphasize to you that notes are simply an aid

13   to your memory.  Notes that you may have made should not be

14   given greater weight or influence than the recollections or

15   impressions of other jurors with respect to the evidence

16   presented or what conclusions, if any, should be drawn from the

17   such evidence.  All jurors' recollections are equal.

18        Some of the exhibits received in evidence at this

19   trial were in the form of charts.  Some of these charts were

20   introduced as summaries.  Summary charts are not themself

21   direct evidence.  They are instead summaries or analyses of

22   evidence that was received, either in the form of documents or

23   testimony.  The charts are intended to assist you in your

24   deliberations.  However, it is the underlying evidence and the

25   weight that you attribute to it that gives value and

1    significance to these charts.  To the extent that the charts

2    conform to what you determine the underlying evidence to be,

3    you should accept them.  To the extent that the charts differ

4    from what you determine the underlying evidence to be, you may

5    reject them.

6            The fact that the prosecution is brought in the name

7    of the United States of America entitles the government to no

8    greater consideration than that given to any other party.  By

9    the same token, the government is entitled to no less

10   consideration.

11           The indictment is not evidence.  It is an accusation,

12   a statement of what the government intends to prove by offering

13   evidence at trial.  It gives the defendants notice of the

14   charges against them and states the nature of the accusations.

15           Because the indictment is not evidence and does not

16   prove guilt, you are to give it no weight.  Nor are you to

17   attempt to consider how the indictment was obtained.  A

18   defendant begins trial with a clean slate and without any

19   evidence against him or her.  What matters is the evidence that

20   you heard and saw during the trial.

21           The defendants are formally charged in an indictment.

22   The indictment consists of charges or accusations.  It is not

23   evidence.  I will not read the entire indictment to you at this

24   time.  Rather, I will first summarize the offenses charged in

25   the indictment.  Then I will explain in detail the elements of

1    the offenses.

2            Before I do so, however, I need to define the term

3    reasonable doubt, for the government must prove each element of

4    the crimes beyond a reasonable doubt.  Since, in order to

5    convict the defendant of a given charge, the government is

6    required to prove that charge beyond a reasonable doubt, the

7    question then is:  What is a reasonable doubt?  The words

8    almost define themselves.  It is a doubt based upon reason.  It

9    is a doubt that a reasonable person has after carefully

10   weighing all of the evidence.  It is a doubt that would cause a

11   reasonable person to hesitate to act in a matter of importance

12   in his or her personal life.  Proof beyond a reasonable doubt

13   must, therefore, be proof of a convincing character that a

14   reasonable person would not hesitate to rely upon in making an

15   important decision.

16           A reasonable doubt is not caprice or whim.  It is not

17   speculation or suspicion.  It is not an excuse to avoid the

18   performance of an unpleasant duty.  The law does not require

19   that the government prove guilt beyond all possible doubt;

20   proof beyond a reasonable doubt is sufficient to convict.

21           If, after fair and impartial consideration of the

22   evidence, you have a reasonable doubt as to the defendant's

23   guilt with respect to a particular charge against him, you must

24   find the defendant not guilty on that charge.

25           On the other hand, if, after fair and impartial

1    consideration of all of the evidence, you are satisfied beyond

2    a reasonable doubt of the defendant's guilt with respect to a

3    particular charge against him, you should find the defendant

4    guilty of that charge.

5         Having defined reasonable doubt, let me discuss the

6    charges.  The indictment contains two charges or counts.

7         Count One charges Norman Seabrook and Murray Huberfeld

8    with participating in a conspiracy to commit honest services

9    fraud against the Correction Officers Benevolent Association,

10   or COBA, in connection with Seabrook's position as the

11   president of COBA.  In particular, Count One charges that

12   Huberfeld agreed to pay kickbacks to Seabrook in exchange for

13   Seabrook directing millions of dollars of COBA funds to a

14   Manhattan hedge fund.

15        Under our criminal laws, conspiring or agreeing to

16   commit a crime, as charged in Count One, is a separate crime

17   from committing the crime, which is charged in Count Two.

18        Count Two charges that the Seabrook committed honest

19   services fraud against COBA and Huberfeld aided and abetted the

20   same.  In particular, Count Two alleges that Huberfeld arranged

21   the payment of a kickback to Seabrook in exchange for Seabrook

22   directing millions of dollars of COBA funds to a Manhattan

23   hedge fund.

24        Now there are two defendants on trial before you.

25   Each has been charged with the same crimes.  You must return a

1    separate verdict of guilty or not guilty for each defendant.

2    In reaching your verdict, bear in mind that guilt is personal

3    and is individual.  Your verdict must be based solely upon the

4    evidence about each defendant.  The case against each defendant

5    stands or falls upon the proof or lack of proof against that

6    defendant alone, and your verdict as to any defendant should

7    not influence your decision as to any other defendant.

8            Count Two, honest services wire fraud.

9            As I have stated, defendants Norman Seabrook and

10   Murray Huberfeld are charged with two counts in the indictment.

11   Count One charges a conspiracy to violate the honest services

12   wire fraud statute, and Count Two charges a violation of the

13   honest services wire fraud statute.

14           To make my instructions more easily understood, I will

15   start with Count Two first and then discuss Count One.  As to

16   Count Two, I will instruct you first as to Norman Seabrook and

17   then as to Murray Huberfeld.

18           In order to sustain its burden of proof against

19   Mr. Seabrook with respect to Count Two, the honest services

20   wire fraud count, the government must prove four elements

21   beyond a reasonable doubt.

22           First, that there was a scheme or artifice to defraud

23   the New York City Correction Officers Benevolent Association

24   and its members' intangible right to Norman Seabrook's honest

25   services through bribery or kickbacks.

1          Second, that Norman Seabrook knowingly and willfully

2    participated in the scheme or artifice, with knowledge of its

3    fraudulent nature and with specific intent to defraud.

4          Third, that the scheme or artifice to defraud involved

5    a material misrepresentation or omission.

6          Fourth, that in the execution of that scheme,

7    Mr. Seabrook used or caused the use by another of interstate or

8    foreign wires, as alleged in the indictment.

9          First element, existence of scheme or artifice to

10   defraud.

11         The first element of honest services wire fraud that

12   the government must prove beyond a reasonable doubt is that

13   there was a scheme or artifice to defraud COBA of its

14   intangible right to the honest services of Norman Seabrook

15   through a kickback.  A union official owes a fiduciary duty,

16   that is, a duty of honest and faithful services, to his union

17   and its members.  When a union official obtains an undisclosed

18   kickback in exchange for actions taken in his capacity as a

19   union official on behalf of the person or entity paying the

20   bribe or kickback, he has breached his duty of honest and

21   faithful service.

22         A "scheme or artifice" is a plan for the

23   accomplishment of an object.

24         "Fraud" is a general term that embraces all the

25   various means that human ingenuity can devise and that are

1    resorted to by an individual to gain an advantage over another

2    by false representations, suggestions or supression of the

3    truth, or deliberate disregard for the truth.

4        Thus, a "scheme to defraud" in this context is merely

5    a plan to deprive COBA of its right to Norman Seabrook's honest

6    services through the payment of an undisclosed kickback to

7    Mr. Seabrook in exchange for his steering the union's funds.

8        A scheme to defraud need not be shown by direct

9    evidence, but may be established by all of the circumstances

10   and facts in the case.

11       A statement, representation, or document is false if

12   it is untrue when made and was then known to be untrue by the

13   person making it or causing it to be made.  A statement,

14   representation, or document is fraudulent if it was made

15   falsely and with intent to deceive.  A representation,

16   statement, claim, or document may also be fraudulent if it

17   contains half truths or if it conceals material facts in a

18   manner which makes what is said or represented deliberately

19   misleading or deceptive.

20       The deception need not be premised on spoken or

21   written words alone.  The arrangement of the words or the

22   circumstances in which they are used may convey the false and

23   deceptive appearance.  In the context honest services fraud,

24   the deceit may consist of the concealment of kickbacks that the

25   union official has solicited or received, or the union

1    official's implicit false pretense to his union that he has not

2    solicited or obtained kickbacks in exchange for taking actions

3    on behalf of the person or entity providing the bribes or

4    kickbacks.  If there is deception, the manner in which it is

5    accomplished is immaterial.

6            It does not matter whether any of the individuals or

7    entities involved might have discovered the fraud had they

8    probed it further.  If you find that a scheme or artifice

9    existed, it is irrelevant whether you believe that any

10   individual or entity involved was careless, gullible, or even

11   negligent.  Furthermore, it is not necessary that the

12   government prove that the intended victim actually suffered any

13   loss.  It is sufficient for the government to prove that COBA

14   did not receive the honest and faithful services of Seabrook.

15           To prove that Mr. Seabrook has committed the

16   particular scheme to defraud here beyond a reasonable doubt,

17   the government must show that he was involved in a kickback

18   scheme.  A kickback scheme involves a union official's steering

19   business of his union to a third party in exchange for

20   something of value in violation of his fiduciary duty to the

21   union.  That is, the government must show that Mr. Seabrook

22   received a kickback in a quid pro quo.  *Quid pro quo* is Latin,

23   and it means "this for that" or "these for those."  A kickback

24   is anything of value which is provided to a union official in

25   exchange for the promise or performance of official action.

The term "official action" includes any decision or action on any question or matter which may at any time be pending before the union, or pursuant to the union bylaws may be brought before the union.  A union official can perform an official action by exercising influence over a union decision when it is a settled practice as part of the official's position for him to do so.  In addition, official action includes the exercise of both formal official influence, such as a union official's votes, and informal official influence, such as exerting pressure on other union officials.  However, setting up a meeting or engaging in a discussion with another union official, without more, is not an official action.

As I have previously noted, a union official receives a bribe or a kickback when he demands, seeks, or receives something of value, directly or indirectly, from another person in exchange for taking official action on behalf of the person or entity paying the kickback.  While outwardly appearing to be exercising independent judgment in his actions on behalf of the union, the union official instead has been paid privately for his actions.  Thus, the union or employer is not receiving the union official's honest and faithful service to which it is entitled.

The union official need not have initiated the payments, but he must have known that the payment was made in exchange for influencing his actions based on his position.

1          The improper benefit may consist of money and other

2      financial benefits, whether given on a one-time basis or as a

3      stream of payments to the defendant.  You have heard testimony

4      that Jona Rechnitz gave Norman Seabrook gifts.  Standing alone,

5      the fact that Mr. Seabrook may have received trips, shoes,

6      cigars, or other such gifts from Mr. Rechnitz does not make

7      Mr. Seabrook or Mr. Huberfeld guilty of either of the charges

8      in this case.

9          It is not a defense for a defendant to claim that he

10     would have lawfully performed the actions in question even

11     without having accepted a thing of value.  In other words, it

12     is not a defense that the offer or promise of anything of value

13     was made to a union official in exchange for actions that were

14     lawful, desirable, or even beneficial to his union.  The

15     offense of honest services fraud is not concerned with the

16     wisdom or results of the union official's decisions, but rather

17     with the manner in which the official makes his or her

18     decisions.

19         The commission of a kickback requires that the

20     government prove that the thing of value was given and received

21     with the deliberate purpose of influencing an official act of

22     the person it was given to.  A kickback may not be founded on a

23     mere attempt to curry favor or build good will.  Laws

24     criminalizing kickback payments are designed to prevent quid

25     pro quo corruption where the union official who has a duty of

1    loyalty to his membership exchanges his official action for

2    something of value.

3         If you find that Mr. Seabrook understood that the

4    thing of value being provided was solely to cultivate good will

5    or to curry favor with the person or entity who provided the

6    thing of value and not in exchange for the promise or

7    performance of any official action, then this element will not

8    have been proven.  On the other hand, if you find that the

9    government has proven that Mr. Seabrook accepted the kickback

10   or thing of value, at least in part, to take official action in

11   return four the kickback, then this element will have been

12   proven.

13        If you find beyond a reasonable doubt that

14   Mr. Seabrook has violated the duty to provide honest services

15   by soliciting or receiving kickback payments, as defined here,

16   alone or with the help of others, then you may find this

17   element satisfied.

18        Second element, participation in a scheme with intent

19   to defraud.

20        The second element that the government must prove

21   beyond a reasonable doubt is that Mr. Seabrook knowingly and

22   willfully participated in a scheme to defraud with knowledge of

23   its fraudulent nature and with specific intent to defraud.

24        "Knowingly" means to act voluntarily and deliberately

25   rather than mistakenly or inadvertently.

1          "Willfully" means to act knowingly and purposely, with

2    an intent to do something the law forbids, that is to say with

3    bad purpose either to disobey or disregard the law.

4          To "participate" in a scheme to defraud means to

5    associate oneself with it with a view and an intent toward

6    making it succeed.

7          "Intend to defraud" means to act knowingly with a

8    specific intent to deceive for the purpose of causing some

9    financial or property loss to another or depriving another of

10   the intangible right of honest services.

11         The question of whether a person acted knowingly,

12   willfully, and with intent to defraud is a question of fact for

13   you to determine like any other fact question.  This question

14   involves one's state of mind.  Direct proof of knowledge and

15   fraudulent intent is almost never available.  It would be a

16   rare case where it could be shown that a person wrote or stated

17   that as of a given time in the past he committed an act with

18   fraudulent intent.  Such direct proof is not required.

19         In our everyday affairs we are continuously called

20   upon to decide from the actions of others what they intended

21   and what their state of mind is.  Experience has taught us that

22   frequently actions speak louder and more clearly than spoken or

23   written words.  The ultimate facts of knowledge and criminal

24   intent, though subjective, may be established by circumstantial

25   evidence based upon a person's outward manifestations, words,

1   conduct, acts, and all the surrounding circumstances disclosed

2   by the evidence and the rational or logical inferences that may

3   be drawn therefrom.  Circumstantial evidence, if believed, is

4   of no less value than direct evidence.

5          Because an essential element of the crime charged is

6   intent to defraud, it follows that good faith on the part of a

7   defendant is a complete defense to a charge of honest services

8   wire fraud.  However, a defendant has no burden to establish a

9   defense of good faith.  The burden is on the government to

10  prove fraudulent intent and the consequent lack of good faith

11  beyond a reasonable doubt.  In this regard, it is not necessary

12  for the government to prove that the defendant was motivated

13  solely by improper considerations.  A defendant may be found to

14  have an intent to defraud even if he also has other intents.

15  The government will have satisfied its burden of proof on this

16  element if you find that the defendant has an intent to

17  defraud, even if he also had other proper or neutral intents

18  for his actions.

19         Proof of motive is not a necessary element of the

20  crimes with which the defendants are charged.  Proof of motive

21  does not establish guilt, nor does the lack of proof of motive

22  establish that a defendant is not guilty.  The presence or

23  absence a motive is, however, a circumstance which you may

24  consider as bearing on a defendant's intent.

25         To conclude on this element, in order to sustain the

1   charge against Mr. Seabrook, the government must establish

2   beyond a reasonable doubt that defendant was a knowing

3   participant in the scheme and acted with specific intent to

4   defraud.

5           Third element, materiality.

6           The third element that the government must prove

7   beyond a reasonable doubt is that the false pretenses,

8   representations, promises or omissions described in relation to

9   the first element were material in that they had the natural

10  tendency to influence or were capable of influencing the COBA

11  board to change its behavior.  Put another way, a material fact

12  is one which would reasonably be expected to be of concern to a

13  reasonable and prudent person in relying upon the

14  representation or statement in making a decision.

15          This means that if you find a particular statement of

16  fact to have been false, you must determine whether that

17  statement was one that a reasonable person might have

18  considered important in making his or her decision.  The same

19  principle applies to fraudulent half-truths or omissions of

20  material facts.

21          Fourth element, use of wires.

22          The fourth and final element that the government must

23  prove beyond a reasonable doubt is the use of an interstate or

24  international wire communication in furtherance of the scheme

25  to defraud.  The term "wire facilities" includes telephones,

1    faxes, emails and wire transfers between banks.  The wire

2    communication must pass between two or more states as, for

3    example, a telephone call between New York and any other state.

4         It is not necessary for a defendant to be directly or

5    personally involved in the wire communication as long as the

6    communication was reasonably foreseeable in the execution of

7    the alleged scheme to defraud in which the defendant is accused

8    of participating.

9         In this regard, it would be sufficient to establish

10   this element of the crime if the evidence justifies a finding

11   that the defendant caused the wires to be used by others; and

12   this does not mean that a defendant himself must have

13   specifically authorized others to use a wire facility.  When

14   one does an act with knowledge that the use of the wire will

15   follow in the ordinary course of business or where such use of

16   the wires can reasonably be foreseen, even though not actually

17   intended, then he causes the wires to be used.  Incidentally,

18   this wire use requirement is satisfied even if the wire use was

19   done by a person with no knowledge of the fraudulent scheme,

20   including a victim of the alleged fraud.

21        The use of the wire need not itself be fraudulent.

22   Stated another way, the material wired need not contain any

23   fraudulent representation or even any request for money.  It is

24   sufficient if the wires were used to further or assist in

25   carrying out the scheme to defraud.

1          Finally, if you find that the wire communication was

2     reasonably foreseeable and that the interstate wire use charged

3     in the indictment took place, then this element is satisfied

4     even if it was not foreseeable that the wire communication

5     would cross state or national lines.  However, if you find that

6     wire communications were used in furtherance of the scheme to

7     defraud, you must be unanimous as to at least one of the

8     particular interstate or foreign wire communications in

9     furtherance of the scheme that occurred.

10          Aiding and abetting liability.

11          Aiding and abetting liability is its own theory of

12     criminal liability.  Under the aiding and abetting statute, it

13     is not necessary for the government to show that a defendant

14     himself physically committed the crime with which he is charged

15     in order for the government to sustain its burden of proof.  A

16     person who aids and abets another to commit an offense is just

17     as guilty of that offense as if he committed it himself.

18          Accordingly, you may find Murray Huberfeld guilty of

19     honest services wire fraud if you find beyond a reasonable

20     doubt that the government has proven that Mr. Seabrook actually

21     committed the crime of honest services wire fraud and that

22     Mr. Huberfeld aided and abetted in the commission of that

23     crime.

24          The first requirement is that you find that another

25     person has committed the crime at issue:  Honest services wire

1    fraud as charged in Count Two.  If you find that Mr. Seabrook

2    did not commit honest services wire fraud, then you need not

3    deliberate further on Count Two as to Mr. Huberfeld.  If

4    Mr. Seabrook is not guilty of that crime, then Mr. Huberfeld

5    cannot be guilty of aiding and abetting him to commit it.

6            To aid and abet another to commit a crime, a defendant

7    must have willfully and knowingly associated himself in some

8    way with the crime, and he must have participated in the crime

9    by doing some act to help make the crime succeed.

10           Participation in a crime is willful if done

11   voluntarily and intentionally and with the specific intent to

12   do something which the law forbids or with the specific intent

13   to fail to do something the law requires to be done, that is to

14   say, with a bad purpose either to disobey or disregard the law.

15           The mere presence of Mr. Huberfeld where a crime is

16   being committed, even coupled with knowledge by the defendant

17   that a crime is being committed, is not sufficient to establish

18   aiding and abetting.  One who has no knowledge that a crime is

19   being committed or is about to be committed, but inadvertently

20   does something that aids in the commission of that crime, is

21   not an aider and abettor.  An aider and abettor must know that

22   the crime is being committed and act in a way which is intended

23   it to bring out the success of the criminal venture.

24           To determine if Mr. Huberfeld aided and abetted the

25   commission of honest services wire fraud, ask yourself these

1    questions:

2            Did Mr. Seabrook commit the crime at issue, the crime

3    of honest services wire fraud?

4            If so, did Mr. Huberfeld participate in that crime

5    charged as something that he wished to bring about?

6            Did Mr. Huberfeld knowingly and willfully associate

7    himself with the honest services wire fraud?

8            Did he seek by his actions to make the criminal

9    venture succeed?

10           If so, then he is an aider and abettor, and therefore

11   he is guilty of the offense under consideration.  If, on the

12   other hand, your answer to any one of these questions is no,

13   then he is not an aider and abettor and you must find him not

14   guilty.

15           Count One, conspiracy to commit honest services wire

16   fraud.

17           In addition to the substantive count of honest

18   services wire fraud in Count Two, defendants Seabrook and

19   Huberfeld are charged in Count One of the indictment with

20   participating in a conspiracy to violate the honest services

21   wire fraud statute, the crime I have just described.

22           A conspiracy is a kind of criminal partnership, an

23   agreement of two or more persons to join together to accomplish

24   some unlawful purpose.  In order to satisfy its burden of proof

25   with respect to the allegation of conspiracy, the government

1    must establish each of the following elements beyond a

2    reasonable doubt.

3             First, the existence of the conspiracy charged in the

4    indictment.

5             Second, that at some point the defendant you are

6    considering knowingly and willfully became a member of and

7    joined in the conspiracy.

8             Element one, conspiracy, existence of an agreement.

9             The first element that the government must prove

10   beyond a reasonable doubt is the existence of the conspiracy;

11   that is, the government must prove beyond a reasonable doubt

12   that two or more persons came to an agreement or understanding

13   that would try to accomplish an unlawful purpose as charged in

14   Count One.

15            The offense of conspiracy to commit an illegal act is

16   separate and distinct from the actual commission of the illegal

17   act that is the object of the conspiracy.  To put it in

18   context, conspiracy to commit the illegal act of honest

19   services wire fraud is a separate and distinct crime from

20   committing honest services wire fraud.

21            The defendant you are considering need not have

22   committed the illegal act or acts that is the object of the

23   conspiracy in order to be found guilt of the separate and

24   independent crime of conspiracy.  Putting it in practical

25   terms, even if you acquit the defendant of Count Two, which is

1   is honest services wire fraud, you must still consider whether

2   that defendant conspired to commit that crime because it is a

3   separate, independent crime.

4           In order for the government to satisfy this element,

5   you need not find that the alleged members of the conspiracy

6   met together and entered into any express or formal agreement.

7           (Continued on next page)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          Similarly, you need not find that the alleged

2   conspirator stated in words or writing what the scheme was, its

3   object or purpose, or every precise detail of the scheme or the

4   means by which its object or purpose was to be accomplished.

5          Indeed, it would be extraordinary if there were such a

6   formal document or specific oral agreement.  When people agree

7   to enter into a criminal conspiracy, much is left to

8   unexpressed understanding.  What the government must prove is

9   that there was a mutual understanding, either spoken or

10  unspoken, between two or more people to cooperate with each

11  other to accomplish an unlawful act.

12         You may, of course, find that the existence of an

13  agreement to disobey or disregard the law has been established

14  by direct proof.  However, since conspiracy is, by its very

15  nature, characterized by secrecy, you may also infer its

16  existence from the circumstances of this case and the conduct

17  of the parties involved.

18         It is not required that any particular number of

19  people join together in order for the government to prove that

20  a conspiracy existed.  You need only find that two or more

21  people entered into the unlawful agreement alleged in the

22  indictment in order for you to find that a conspiracy existed.

23         In a very real sense, then, in the context of

24  conspiracy cases, actions often speak louder than words.  In

25  this regard, you may, in determining whether an agreement

1   existed here, consider the actions and statements of all of

2   those you find to be participants as proof that a common design

3   existed on the part of the persons charged to act together to

4   accomplish an unlawful purpose.

5        Often the only evidence available is that of

6   disconnected acts that, when taken together in connection with

7   each other, show a conspiracy or agreement to secure a

8   particular result as satisfactorily and conclusively as more

9   direct proof.

10        Of course, proof concerning the accomplishment of the

11   objects of the conspiracy may be the most persuasive evidence

12   of the existence of the conspiracy itself, but it is not

13   necessary that the conspiracy actually succeed in its purpose

14   in order for you to conclude that the conspiracy existed.

15        In determining whether the conspiracy charged in Count

16   1 actually existed, you may consider all the evidence of the

17   acts, conduct and statements of the alleged conspirators and

18   the reasonable inferences to be drawn from such evidence.

19        In regard to the timing of the alleged wire fraud

20   conspiracy, Count 1 alleges that the conspiracy existed from

21   about November 2013 through about 2015.  It is not necessary

22   that the government prove that the conspiracy started or ended

23   on a particular precise date as long as it proves beyond a

24   reasonable doubt that the conspiracy was formed and existed at

25   some point during the period alleged in the indictment which

1    covers from November 2013 until 2015.

2         Finally, a conspiracy requires an object, some illegal

3    thing that the members of the conspiracy agree they will try to

4    accomplish.  The conspiracy alleged in Count 1 has as its

5    object honest services wire fraud.  I have already explained

6    the law regarding honest services wire fraud, so in deciding

7    whether people agreed to violate the law of honest services

8    wire fraud, you should consider my instructions on honest

9    services wire fraud.

10        2.  Conspiracy, members in a conspiracy.

11        If you conclude that the government has proven beyond

12   a reasonable doubt that the conspiracy charged in Count 1 of

13   the indictment existed, you must next determine the second

14   question, and that is whether the defendant you are considering

15   participated in the conspiracy with knowledge of its unlawful

16   purpose and in furtherance of its unlawful object.

17        The government must prove beyond a reasonable doubt

18   that the defendant, by his own actions and conduct,

19   intentionally and knowingly entered into the conspiracy or

20   agreement with a criminal intent; that is, with awareness of

21   the generally unlawful nature of his acts.  The defendant need

22   not have known which specific law or rule his acts violated in

23   order to be aware that his acts were unlawful.

24        As you can see, this element concerns a person's state

25   of mind.  Direct proof of state of mind is not always

available.  Indeed, it would be a rare case where it could be

shown that a person wrote or stated that as of a given time in

the past, he committed an act with a certain state of mind.

Such direct proof is not required.

     For this element, the terms "intentionally" and

"knowingly" mean that you must be satisfied beyond a reasonable

doubt that in joining the conspiracy, if you find the defendant

did join the conspiracy, the defendant knew what he was doing,

that he took the actions in question deliberately and

voluntarily.

     An act is done intentionally and knowingly only if it

is done deliberately and purposefully; that is, the act must

have been the product of the defendant's conscious objective

rather than the product of force, mistake, accident, mere

negligence or some other innocent reason.

     Now, knowledge is a matter of inference from the

proven facts.  Science has not yet devised a manner of looking

into a person's mind and knowing what that person is thinking.

However, you have before you the evidence of certain acts,

conversations and statements alleged to involve the defendants

and others.  The ultimate facts of knowledge of criminal intent

may be established by words and conduct and all the surrounding

circumstances as well as the rational or logical inferences

that may be drawn from the words and conduct.  It is for you to

determine whether the government has established beyond a

1   reasonable doubt such knowledge and intent on the part of the

2   defendant you are considering.

3          To have guilty knowledge, the defendant need not have

4   known the full extent of the conspiracy charged in Count 1 or

5   all of its activities or all of its participants.  It is not

6   even necessary that the defendant know every other member of

7   the conspiracy.  In fact, the defendant may know only one other

8   member of the conspiracy and still be a co-conspirator.  Nor is

9   it necessary that a defendant receive any monetary benefit for

10  participating in the conspiracy or have a financial stake in

11  the outcome so long as he, in fact, participated in the

12  conspiracy in the manner explained with knowledge of its object

13  or objects and with the intent to further that object or

14  objects.

15         The duration and extent of a defendant's participation

16  in the conspiracy has no bearing on the issue of a defendant's

17  guilt.  The defendant need not have joined the conspiracy at

18  the outset.  The defendant may have joined it for any purpose

19  at any time in its progress, and that defendant will still be

20  held responsible for all that was done before he joined and all

21  that was done during the conspiracy's existence while the

22  defendant was a member.

23         Each member of the conspiracy may perform separate and

24  distinct acts and may perform them at different times.  Some

25  conspirators played major roles, while others played minor

1   roles in the scheme.  An equal role is not what the law

2   requires.  In fact, even a single act may be sufficient to draw

3   the defendant within the ambit of the conspiracy.

4        However, I want to caution you that the mere

5   association by one person with another does not make that

6   person a member of the conspiracy even when coupled with

7   knowledge that a conspiracy is taking place.  Similarly, mere

8   presence at the scene of the crime, even coupled with knowledge

9   that a crime is taking place, is not sufficient to support a

10  conviction.  In other words, knowledge without participation is

11  not sufficient.  A person may know or be friendly with a

12  criminal without being a criminal himself.

13       Mere similarity of conduct or the fact that they may

14  have assembled together and discussed common aims and interests

15  does not necessarily establish membership in a conspiracy.

16  What is necessary is that the defendant participated in the

17  conspiracy with knowledge of its unlawful purpose and with an

18  intent to aid in the accomplishment of its unlawful object.

19       In sum, the defendant, with an understanding of the

20  unlawful character of the conspiracy, must have intentionally

21  and knowingly engaged, advised or assisted in it for the

22  purpose of furthering an illegal undertaking.  The defendant

23  thereby became a knowing and willing participant in the

24  unlawful agreement; that is to say, a conspirator.

25       You will notice that the indictment refers to various

1    dates.  The law requires only a substantial similarity between

2    the time alleged in the indictment and the time established by

3    the evidence.

4         In addition to evaluating the elements of each

5    offense, you must also consider the issue of venue as to each

6    offense.  The government must establish what is called venue,

7    which means that some act in furtherance of that charge

8    occurred in the Southern District of New York.  The Southern

9    District of New York includes Manhattan, the Bronx and

10   Westchester, Rockland, Putnam, Dutchess, Orange and Sullivan

11   Counties.  Venue is proven if any act in furtherance of the

12   crime you are considering occurred in the Southern District of

13   New York regardless of whether it was the act of a charged

14   defendant or anyone else.

15        Furthermore, on the issue of venue only, the

16   government can meet its burden by a preponderance of the

17   evidence rather than proof beyond a reasonable doubt.  That

18   means the government can meet its burden by showing that it was

19   more likely than not that an act in furtherance of a given

20   crime occurred in the Southern District of New York.

21        There are several people whose names you have heard

22   during the course of the trial who did not appear here to

23   testify.  Both the government and the defendants have the same

24   power to subpoena witnesses to testify on their behalf.  If a

25   potential witness could have been called by the government or

1    by a defendant, and no one called the witness, then you may

2    draw the conclusion that the testimony of the absent witness

3    might have been unfavorable to the government or to the

4    defendants, or to both.

5          On the other hand, you may choose to draw no inference

6    at all from the failure of either side to call a witness.  You

7    should remember that there is no duty on either side to call a

8    witness whose testimony would be merely cumulative of testimony

9    already in evidence or who would merely provide additional

10   testimony to facts already in evidence.

11         You should also remember that the law does not impose

12   on a defendant in a criminal case the burden or duty of calling

13   any witnesses or producing any evidence.

14         You have heard testimony of law enforcement officers

15   and employees of the government.  The fact that a witness is

16   employed by the government does not mean that his or her

17   testimony is necessarily deserving of more or less

18   consideration or greater or lesser weight than that of any

19   other witness.

20         It is legitimate for defense counsel to attack the

21   credibility of a government witness like any other witness.  It

22   is your decision, after reviewing all of the evidence, whether

23   to accept or reject the testimony of the witness and to give

24   that testimony whatever weight you find it deserves.

25         You may not draw any inference, favorable or

1    unfavorable, towards the government or the defendants from the

2    fact that any person other than the defendants is not on trial

3    here.  You may not speculate as to the reasons why other

4    persons are not on trial.  Those matters are wholly outside

5    your concern and have no bearing on your function as jurors.

6          You have also heard from a witness who testified that

7    he was involved in criminal conduct and who subsequently pled

8    guilty pursuant to what is called a cooperation agreement with

9    the government.  Your concern is whether a witness has given

10    truthful testimony in court.  Whether or not you approve of the

11    use of cooperating witnesses to detect and investigate unlawful

12    activities is not to enter into your deliberations in any way.

13    The government sometimes must rely on the testimony of

14    witnesses who have pleaded guilty and are cooperating.  Indeed,

15    the testimony of a single accomplice witness may be enough in

16    itself for conviction if you believe the testimony establishes

17    guilt beyond a reasonable doubt.

18          You should scrutinize and view with caution the

19    testimony of any witness who has signed a cooperation

20    agreement.  In doing so, you should ask yourself whether the

21    witness would benefit more from lying or by telling the truth.

22    Was his testimony made up in any way because he believed or

23    hoped he would receive favorable treatment by testifying

24    falsely, or did he believe that his interests would be best

25    served by testifying truthfully?

1          If you believe that the witness was motivated by hopes

2     of personal gain, was the motivation one that would cause him

3     to lie or was it one that would cause him to tell the truth?

4     Did the motivation color his testimony?  In sum, you should

5     look at all of the evidence in deciding what credence and what

6     weight, if any, you will want to give to the cooperating

7     witness.

8          You have heard testimony from a witness who pled

9     guilty to the charges arising out of the same facts as this

10    case.  You are to draw no conclusions or inferences of any kind

11    about the guilt of the defendants on trial here from the fact

12    that a witness pled guilty to similar charges or unrelated

13    charges.  The decision of a witness to plead guilty is his own

14    personal decision.  It may not be used by you in any way as

15    evidence against or unfavorable to the defendants on trial

16    here.

17         Norman Seabrook and Murray Huberfeld did not testify

18    in this case.  Under our Constitution, a defendant has no

19    obligation to testify or to present any evidence because it is

20    the government's burden to prove guilt beyond a reasonable

21    doubt.  That burden remains with the government throughout the

22    entire trial.  A defendant is never required to prove that he

23    is innocent.  You may not attach any significance to the fact

24    that a defendant did not testify.  No adverse inference against

25    him may be drawn by you because he did not take the witness

1    stand.  You may not consider this in any way in your

2    deliberations.

3            You may consider the investigative techniques used by

4    the government in deciding whether the government has met its

5    burden of proof because you should look to all of the evidence

6    or lack of evidence in deciding whether the defendants are

7    guilty.  However, you are also instructed that there is no

8    legal requirement that the government use any specific

9    investigative techniques to prove its case.  Whether you

10   approve or disapprove of various law enforcement techniques is

11   not the question.  You should determine whether or not, based

12   on the evidence or lack of evidence, the defendant's guilt has

13   been proven beyond a reasonable doubt.

14           The government has offered evidence in the form of

15   recorded conversations, text messages and emails.  Whether you

16   approve or disapprove of the recording of these conversations

17   may not enter your deliberations.  I instruct you that the

18   recordings were made in a lawful manner and that no one's

19   rights were violated and that this evidence was properly

20   admitted at this trial.

21           You must, therefore, regardless of any personal

22   opinions, consider this evidence as you would any other

23   evidence in this case in making your determination as to its

24   meaning and significance, if any, in evaluating whether the

25   government has proven beyond a reasonable doubt the guilt of

1   the defendants.

2           Stipulations have been entered into relating to

3   various facts in this case.  A stipulation of fact is an

4   agreement between the parties that a certain fact is true.  You

5   must regard such agreed facts as true.

6           You have also heard evidence in the form of

7   stipulations of testimony.  A stipulation of testimony is an

8   agreement among the parties that, if called, a witness would

9   have given certain testimony.  You must accept as true the fact

10  that the witness would have given the testimony.  However, it

11  is for you to determine the significance of that testimony.

12          We have among the exhibits received in evidence some

13  documents that are redacted.  "Redacted" means that part of the

14  document or tape was taken out.  You are to concern yourself

15  only with the part of the item that has been admitted into

16  evidence.  You should not consider any possible reason why the

17  other part of it has been deleted.

18          The defendants have pled not guilty to the charges.

19  As a result, the burden is on the government to prove guilt

20  beyond a reasonable doubt.  This burden never shifts to a

21  defendant and never imposes upon a defendant the burden or duty

22  of testifying, calling any witnesses or locating or producing

23  any evidence.  The law presumes the defendants are innocent of

24  each charge.  This presumption of innocence alone is sufficient

25  to acquit a defendant.  This presumption was with each

1    defendant when the trial began and remains with each defendant

2    unless and until you are convinced that the government has

3    proven a defendant's guilt beyond a reasonable doubt.

4            You should not consider the question of possible

5    punishment of a defendant in determining if he is guilty of the

6    crimes charged.  Sentencing is exclusively the function of the

7    court.  It is not your concern and you should not give any

8    consideration to that issue in deciding what your verdict will

9    be.  Therefore, I instruct you not to consider punishment or

10   possible punishment at all in your deliberations in this case.

11           You are not to be swayed by sympathy or prejudice.

12   You are to be guided solely by the evidence in this case.  It

13   is for you alone to decide whether the government has proven a

14   defendant is guilty of the crimes charged solely on the basis

15   of the evidence and subject to the law as I have given it to

16   you.

17           If you have a reasonable doubt as to a defendant's

18   guilt, you should not hesitate to acquit the defendant.  On the

19   other hand, if you should find that the government has met its

20   burden of proving a defendant's guilt beyond a reasonable

21   doubt, you should not hesitate because of sympathy or any other

22   reason to render a verdict of guilty.

23           You're about to go into the jury room and begin your

24   deliberations.  If during those deliberations you want any of

25   the exhibits or any specific portions of the testimony, the

1    exhibits will be furnished to you and the testimony will be

2    provided to you.  Please remember that it is not always easy to

3    locate testimony, so be as specific as you possibly can be in

4    any request for testimony.  A vague or overbroad request for

5    testimony can lead to delays.

6         The foreperson will preside over your deliberations

7    and will be your spokesperson in court.  This is done simply

8    for convenience.  It gives him or her no greater authority and

9    his or her oath has no greater weight than any other jurors.

10   You are free to select any foreperson you like.

11        Any communication with the court should be made to me

12   in writing, signed by your foreperson, and given to one of the

13   marshals.  I will respond to any questions or requests you have

14   as promptly as possible, either in writing or by having you

15   return to the courtroom so I can speak with you in person.

16        Your function now is to weigh the evidence in this

17   case and to determine if the government has proven the crimes

18   charged.  You must base your verdict solely on the evidence or

19   lack of evidence and these instructions as to the law.  You are

20   obligated to follow the law as I instruct you whether you agree

21   or disagree with the particular law in question.

22        The verdict must represent the considered judgment of

23   each juror.  In order to return a verdict, it is necessary that

24   each juror agrees to it.  Your verdict must be unanimous.  You

25   should consult with one another and deliberate with a goal of

1   reaching an agreement.  Each of you must decide the case for

2   himself or herself, but do so only after an impartial

3   discussion and consideration of all of the evidence with your

4   fellow jurors.  Do not hesitate to reexamine your own views and

5   change your opinion if convinced it is erroneous, but do not

6   surrender your honest conviction as to the weight or effect of

7   evidence solely because of the opinion of your fellow jurors.

8        Remember you are judges of the facts.  Your sole

9   interest is to determine whether the government has proven the

10  crimes charged beyond a reasonable doubt.  If you are divided,

11  do not report how the vote stands.  When you reach a verdict,

12  do not report what it is until you have been instructed to do

13  so.

14       In conclusion, ladies and gentlemen, I am sure that if

15  you listen to the views of your fellow jurors and if you apply

16  your own common sense, you will reach a fair verdict here.

17  Remember that your verdict must be rendered without fear,

18  without favor, without prejudice or sympathy.

19       I have prepared a verdict form for you to use and for

20  you to report the verdict you reach unanimously on it.  I have

21  given you the instructions on the law.  What we are going to do

22  now, I will send you to the jury room to take a break.  I have

23  to consult with counsel to make sure I haven't omitted

24  anything.  Do not start deliberating yet.  Do not discuss this

25  case with anyone.  Don't discuss it amongst yourselves.  Don't

1    read anything about this case or listen to anything about this

2    case.  If you see anything, stop reading.  If you hear

3    anything, stop listening.  Again don't let anyone discuss this

4    with you.  Don't discuss it amongst yourselves.  Don't do any

5    research regarding any of the people or issues involved in this

6    case.  I will see you in 10 minutes.

7              (Jury excused)

8              THE COURT:  Please be seated.

9              So, counsel, I made a few edits on the fly there.

10   We'll make those edits in the final version we will give to

11   counsel and give to the jury.  Are there any objections to my

12   reading of the instructions?  Did I leave out anything or make

13   a misstatement?

14             MR. SHECHTMAN:  Judge, Mr. Seabrook used the men's

15   room.  We will waive his appearance for this brief discussion.

16             THE COURT:  That is fine.

17             MR. BELL:  I think we are fine, Judge, yes.

18             THE COURT:  Counsel for Mr. Seabrook?

19             MR. SHECHTMAN:  We are fine, Judge.  We liked your

20   deeper voice.

21             THE COURT:  Counsel for Mr. Huberfeld?

22             MR. MAZUREK:  We are also fine with the instructions.

23             THE COURT:  We'll make those edits before we send that

24   in to the jurors.  What we will do now is I will give counsel a

25   little bit of a break, too.  We will bring all the jurors out

1    and have the marshal sworn, and then afterwards what we can do

2    then, we'll ask the alternate jurors to go and get their

3    belongings and come back out.  Then we can send the other

4    jurors in to start their deliberations.  I will handle that

5    process with the alternate jurors and won't dismiss them and

6    let them go home.  Any objection to that?

7                 MR. BELL:  No, your Honor.

8                 MS. LYNAUGH:  No, your Honor.

9                 THE COURT:  All good with the verdict form?  Counsel

10   have seen that and have the right version?

11                MR. BELL:  Yes, your Honor, we are fine.

12                THE COURT:  I will let counsel have a break.  See you

13   soon.

14                (Recess)

15                THE COURT:  Please be seated.

16                So my law clerk is making those corrections to those

17   typos.  We'll give copies of the final draft of the jury

18   instructions to counsel.  Counsel should look at those and make

19   sure that confirms to what I read.  Once we have that vetted by

20   counsel, we will mark that as Court Exhibit 1 and have that

21   sent into the jury.  The verdict form will be Court Exhibit 2.

22                Any objection to that?

23                MR. BELL:  None, your Honor.

24                MS. LYNAUGH:  No.

25                MR. MAZUREK:  No.

1          THE COURT:  Anything I should say to the jury?

2          The other thing I should say to the jury, I'll bring

3     all the jurors out and go ahead and let the alternate jurors go

4     on about their life.  I will remind the alternate jurors they

5     still cannot read or listen to anything about this case or

6     discuss this case with anyone at all, and I will let them know

7     we'll be in touch with them if we need them and make sure they

8     have removed all of their personal items from the jury room.

9          For the regular jurors, I plan to instruct them that

10    they still cannot read anything about this case or listen to

11    anything about this case or discuss this case with anyone

12    except amongst themselves when they are all in the jury room.

13    If a juror needs to step out to take a smoke break or anything

14    else, they cease their deliberations and may not resume until

15    all the jurors are there.  Any objection to that?

16          MR. BELL:  None your Honor.

17          THE COURT:  All right.  Let's bring them in.  I think,

18    counsel, I will ask my Wonderful and Talented Deputy to ask the

19    alternate jurors to bring their belongings with them unless

20    there is an objection to that?

21          MR. BELL:  None.

22          THE COURT:  Okay, let's do that.

23          (Jury present)

24          THE COURT:  Please be seated.

25          I will ask my Wonderful and Talented Deputy to please

1    swear the marshal in.

2              (The marshal was duly sworn)

3              THE CLERK:  Thank you.

4              THE COURT:  Now, first to the alternate jurors, I am

5    going to instruct you as follows:

6              First of all, we are going to let you leave, but you

7    are not excused from jury duty.  You are still on jury duty, so

8    my prior instructions to you remain in effect.  Do not read

9    anything about this case.  If you see anything about this case

10   in the newspapers or in the internet or anywhere else, stop

11   reading.  Don't listen to anything about this case.  If you

12   hear anything on the television, radio or internet, stop

13   listening.  Do not discuss this case with anyone and don't

14   allow anyone to discuss this with you, meaning don't discuss it

15   amongst yourselves, don't discuss it with deliberating jurors,

16   don't discuss it with anyone and don't let anyone discuss this

17   with you.

18             Also don't do any research regarding any of the people

19   or the issues involved in this case.  You are still on jury

20   duty, but you may leave the courtroom and go on about your

21   lives, with those instructions in mind.  We might still need

22   you.  If so, we will be in touch with you.  We will be in touch

23   with you either way.  If you are no longer needed, we will let

24   you know that as well.  Until you hear from us, those

25   instructions remain in place.

1          Have you retrieved all of your personal items from the

2     jury room?  You may leave.  We have your contact information

3     and we will let you know if we need you, okay.

4          (The alternate jurors left the courtroom)

5          THE COURT:  For the regular jurors, you are now going

6     to start your deliberations.  However, certain instructions are

7     still in effect.  Do not read anything about this case.  If you

8     see anything about this case, the newspaper, on the internet,

9     stop reading.  Do not listen to anything about this case.  If

10    you hear anything about this case on the television, the

11    internet, the radio, stop listening.

12         Do not do any research regarding any of the people or

13    the issues in this case.  Now, the change is in terms of

14    discussing this case, you still may not discuss this case with

15    anyone else outside of the jury room.  You may only discuss

16    this case in the jury room with your fellow jurors when all of

17    you are present.

18         So if a juror needs to step out of the jury room to

19    take a smoke break or something, you must cease your

20    deliberations and you may not resume them until all of you are

21    present.  So if at any time a juror needs to step out, you must

22    cease your deliberations.  Other than that, you still may not

23    discuss this case with anyone else, not even amongst

24    yourselves.

25         So Juror No. X can't have a conversation with Juror

1    No. Y outside of the jury room, and you can't even have that

2    conversation within the jury room unless all of the jurors are

3    present, all right?

4           And again don't read anything about this case.  Don't

5    research anything about the people or issues involved in this

6    case.  Don't let anyone else discuss this with you.  Don't

7    discuss this with anyone else, all right?

8           You may start your deliberations.  We have ordered

9    lunch for you.  Your lunch should be there around 12:30 to

10   12:45, okay?  Stay here for just a moment and let me see

11   counsel in the robing room briefly.

12           (At the sidebar)

13           THE COURT:  I wanted to check before we send them in

14   to deliberate.  Did I leave anything out?

15           MR. MAZUREK:  Were you going to ask them whether they

16   intend to inform us whether they intend to go until 2:30 or

17   5:00?

18           THE COURT:  I hadn't planned on it.  I can.  We told

19   them that before.  Again I don't want to do anything that in

20   any way may make them feel a certain kind of way.  My sense is

21   these jurors aren't particularly shy.  If 2:30 comes around and

22   they want to go, they'll let us know.

23           MR. BELL:  Fine.

24           MR. SHECHTMAN:  Fine.

25           MR. MAZUREK:  That is fine.

1             THE COURT:  We'll leave it alone.  If they don't have

2      a verdict at 4:50 or so, my intention would be to bring them in

3      at 4:55 and excuse them for the day.  At that point it may make

4      sense -- we'll cross that bridge when we get to it -- it may

5      make sense to let them know we won't be sitting Friday.  We'll

6      wait until Thursday morning to tell them that.

7             If they end up not reaching a verdict today, at

8      whatever time that is, my plan is that we dismiss the jury for

9      the day, and I will tell the jury they don't have to come into

10     court, they would just go in the jury room.  Again I will

11     remind them they can't start their deliberations until everyone

12     is there.

13             MR. SHECHTMAN:  Fine.

14             MR. MAZUREK:  Fine.

15             MR. SHECHTMAN:  It probably makes sense for us when

16     they first go in, to make sure we have all the exhibits because

17     we are likely to get a note that says send them all in.  We

18     have ours ready.  You have yours?

19             MR. MAZUREK:  Yes.

20             MR. SHECHTMAN:  We'll check each other's.

21             THE COURT:  While we are back here, we have the final

22     versions of the jury instructions.  Counsel, please look at

23     those.

24             MR. SHECHTMAN:  We are fine.

25             THE COURT:  I want counsel to look at them before we

 1  send them in so there is no issue before we send that in.  We

 2  can go ahead.  I guess I will tell the jury that we'll give

 3  them the instructions later, and maybe it doesn't make sense to

 4  tell them anything, let them start deliberating and get them

 5  the verdict sheet and jury instructions.

 6          MR. SHECHTMAN:  We can tell them they'll have them in

 7  15 minutes.

 8          MS. LYNAUGH:  It is fine.

 9          MR. BELL:  We are comfortable now.

10          MR. SHECHTMAN:  We are fine either way.

11          THE COURT:  We'll just leave that.

12          (In open court)

13          THE COURT:  You may begin your deliberations.

14          (The jury left the courtroom at exactly 10:56 am to

15  begin deliberations)

16          THE COURT:  Please be seated.

17          Again, counsel, go ahead and look through that final

18  version of the jury instructions and make sure that comports

19  with everything that was read, and I think you have checked the

20  verdict sheet.  Let me get one of the copies we gave counsel

21  and let me make sure that is the right one.  Let's have all

22  counsel inspect that before that goes to the jury to make sure

23  that is the right version, and we'll make that Court Exhibit 2.

24          MR. BELL:  The verdict sheet looks good.

25          THE COURT:  Show that same copy to counsel for the

1    defense so that we're all on the same page.

2              (Pause)

3              MS. LYNAUGH:  That is fine with us, your Honor.

4              THE COURT:  We'll mark that as Court Exhibit 2.

5              Let me know when you have finished reviewing the jury

6    instructions, and we'll mark that as Court Exhibit 1 and send

7    that in as well.

8              (Pause)

9              THE COURT:  Yes, counsel?

10             MR. SHECHTMAN:  We are all okay, Judge.

11             THE COURT:  Let's get one of these copies and make

12   sure we have the right copy.

13             (Pause)

14             MR. SHECHTMAN:  We are fine.

15             THE COURT:  Now we're getting a little hyper-technical

16   here, so what we have here, there is writing on the front and

17   back of the documents to save a few trees.  Do counsel care

18   about that?  Is that fine like that or do you want one side for

19   the jury, or it doesn't matter?

20             MR. BELL:  That is fine.

21             MS. LYNAUGH:  It doesn't matter.

22             MR. MAZUREK:  That is fine, your Honor.

23             THE COURT:  We will make this Court Exhibit 1, and I

24   will ask my Wonderful and Talented Deputy to give that to the

25   marshal, and that will go to the jury.  Counsel, you're free to

HB8JSEA2                    Charge

1    hang out and do whatever you want to.

2            At 12:45 the jurors' lunch should get here, so let's

3    have counsel take their lunch break between 12:45 and 1:45.

4    There is no need to be in here for that.  If the jurors have

5    any notes or anything, they'll have to wait till we get back.

6            All right, thanks.

7            (Recess)

8            (Continued on next page)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Jury not present, time noted: 11:22 a.m.)

2          THE COURT:  Counsel, you should have a copy of the

3    exhibits, Court Exhibits 3 and 4.

4          Counsel, do you have copies of the notes?

5          MS. LYNAUGH:  Yes.

6          THE COURT:  Court Exhibit 3 reads:  Dear Judge, may we

7    please be given twelve copies of the instructions you read to

8    us this morning?  Sincerely, signed by the foreman.  Received

9    at 10:56 a.m.

10         Court Exhibit 4:  Judge, is there a way for us to

11   receive twelve copies of the instructions?  This will help the

12   efficiency of our discussions.  Thank you, signed by the

13   foreperson, 11:03.

14         Let me hear from counsel.  I get my guess my

15   inclination is to give them copies of the instructions and we

16   label them -- I guess the question I have is they have asked

17   for twelve copies.  It would ordinarily make sense to give them

18   eleven copies, but they asked for twelve copies so my

19   inclination is to give them twelve copies of the instructions

20   and we label them 1A through L, Court Exhibits 1A through L,

21   but I'll hear what counsels' thoughts are.

22         MR. NAWADAY:  That makes sense to us.

23         MR. MAZUREK:  That's fine.

24         MS. LYNAUGH:  That's fine.

25         THE COURT:  Okay.  Let me check my alphabet, I think

1    that's right.  A through L.

2           So we'll make copies of those notes.  My inclination

3    is for us, instead of bringing them out here, since they're

4    trying to move efficiency, we'll write a note and show it to

5    counsel that says something to the effect of:  We received your

6    notes.  We're making twelve copies of the instructions and we

7    will provide them to you.

8           Any objection to that by the government or the

9    defense?

10           MR. NAWADAY:  No, your Honor.

11           MS. LYNAUGH:  None.

12           MR. MAZUREK:  No.

13           THE COURT:  Okay, we will do that.

14           Let me check with my clerk and my wonderful and

15    talented deputy to see who has the best penmanship, because

16    it's not me.

17           (Recess taken)

18           THE COURT:  Counsel, so again, we did this before.

19    There wasn't a court reporter here, so I want to put this on

20    the record.

21           Again, we received Note Number 3 from the jury, Dear

22    Judge, may we please be given twelve copies of the instructions

23    you read to us this morning.  Sincerely, signed by the foreman.

24           Note number 4, Judge, is there any way for us to

25    received twelve copies of your instructions?  This will help

1    the efficiency of our discussions.

2            I explained to counsel before that my inclination was

3    to give them twelve copies of the instructions, and counsel

4    didn't have any objection to that.  I want to put that on the

5    record so we're clear.

6            Counsel for the government, is that correct?

7            MR. BELL:  It is.

8            THE COURT:  Counsel for the defense, is that correct?

9            MR. MAZUREK:  Yes.

10           MS. LYNAUGH:  Yes.

11           THE COURT:  Counsel for defense waived their client's

12   appearance, and we had that discussion before.  Do counsel for

13   the defense waive your client's appearance right now on the

14   record.

15           MS. LYNAUGH:  Yes.

16           MR. MAZUREK:  We do.

17           THE COURT:  And we also discussed what to say, and we

18   discussed saying something to the effect we have received your

19   note, we are making twelve copies of the instructions for you

20   and we will provide them to you soon.

21           And counsel were in agreement with that, is that

22   correct, counsel for the government and the defense?

23           MR. BELL:  Yes, your Honor.

24           MS. LYNAUGH:  Yes.

25           MR. MAZUREK:  Yes.

1           THE COURT:  And my wonderful and talented deputy typed

2      up a note to that effect.  Have counsel all seen that note we

3      will send into the jury?

4           MR. BELL:  We have, and it's fine.

5           MR. MAZUREK:  Yes.

6           MS. LYNAUGH:  Yes.

7           THE COURT:  So we will mark that note as Court

8      Exhibit 5.  We will send that in to the jury.  My law clerk is

9      currently making copies of the instructions, and when they are

10     here we will mark those as 1A through L and send him in to the

11     jury.

12           Counsel, anything else?

13           MR. BELL:  No, your Honor.

14           THE COURT:  All right.

15           (Recess taken)

16           THE COURT:  We have copies of the jury instructions.

17     We're stapling them.  I want counsel to inspect those before we

18     label them and send them into the jury.  We have twelve copies

19     of the jury instructions, so we'll have counsel review that

20     before we send that in.

21           The other thing that I thought of, and I don't know if

22     counsel want do anything about this, is typically if the jury

23     requested to have a particular instruction reread to them or

24     the like, I would give them some sort of general instruction

25     that you should consider my instructions as a whole, and not

1    single out any instruction.  I don't know, obviously, what the

2    jury is doing in there, I don't know if counsel want me to

3    write something to that effect in there.  It's in the general

4    instructions, it's in like the second paragraph of the

5    instructions.  I wanted to raise that with counsel and see if

6    counsel want me to do that.  I'm willing to do that and write

7    another note and say that, but I wanted to know what counsel's

8    view is, starting with the government.

9               MR. BELL:  I think we're all in agreement there isn't

10   really a need.

11              MS. LYNAUGH:  Agreed.

12              MR. MAZUREK:  That's fine.

13              MR. BELL:  And these were fine with us.

14              MS. LYNAUGH:  That's fine.

15              THE COURT:  Counsel for Huberfeld?

16              MR. MAZUREK:  Yes, I'm good.

17              THE COURT:  We'll label those 1A through L and send

18   them in to the jury.

19              And again for the record, both Mr. Seabrook and

20   Mr. Huberfeld are here.

21              Go ahead.

22              (Recess taken)

23              THE COURT:  Counsel, we have a note.  Counsel should

24   all have copies of the note.  Are counsel and the parties all

25   here?

1          MR. SCHECHTMAN:  We are, your Honor.

2          THE COURT:  The note reads as follows:  Jury

3    undecided, will return tomorrow, requesting email Platinum to

4    COBA, phone calls, prosecution and defense closing statement,

5    restaurant picture, Reynolds and Wien due diligence documents,

6    COBA side letter.  Sincerely, signed by the foreperson.

7          So it's my intention -- I read this as they want to go

8    home now.  It's my intention to bring them out, tell them that

9    we received the note, excuse them for the day with the

10   instructions that I have given them before about not reading to

11   anything or listening to anything or doing any research or

12   discussing this with anyone.  And it seems to me for the phone

13   calls, assuming they're talking about the audio recordings,

14   that we ask the jurors to get here at 9:00, bring them out here

15   when they're all assembled, and play phone calls for them.  But

16   I will hear from counsel.  Seems to me they shouldn't be

17   getting the closing statements.

18         MR. BELL:  There's a handful of things.  You're

19   certainly right about not getting the closing statements, as

20   those are not evidence.  We do think that it makes sense,

21   perhaps even before they leave today so that we can get them

22   started out right tomorrow, that we actually ask them to go

23   back and clarify a couple of things.

24         There are, as your Honor knows, several dozen emails

25   in evidence.  It's not clear what Platinum to COBA means,

1 | whether that would be the full subset of emails that includes

2 | one party from Platinum, one party from COBA.  If so, that's a

3 | lot of emails, and that much isn't clear.

4 |     Phone calls, in addition to referring to the recorded

5 | conversations, which of course would take a while to play all

6 | of them, although if they want them, that's fine, may also very

7 | well refer to the summaries or the phone records underlying

8 | them in terms of patterns of calls.  So I think it makes sense

9 | to clarify that well.

10 |     The restaurant picture is a bit of a surprise, but

11 | we're delighted to provide whatever restaurant pictures exist

12 | in the record.

13 |     The COBA side letter is somewhat clearer, but as to

14 | the other categories, it might make sense for us to have them

15 | clarify, spend five minutes doing that so we can get them what

16 | they need at jump tomorrow morning at 9:00.

17 |     THE COURT:  Defense counsel?

18 |     MR. SCHECHTMAN:  I think we're in agreement.  And I

19 | would suggest that when it comes to emails between -- and I

20 | assume that means between Platinum and COBA, one would simply

21 | say to them:  Do you want all emails that involve someone from

22 | Platinum and someone from COBA, or do you want a subset?

23 |     When it comes -- obviously the summations, they're not

24 | entitled to.  The rest, the pictures, there are two pictures, I

25 | think, but if we send them both -- three, if we send them both,

1      I don't think they will be disappointed.  If you tell them

2      there's three and we send them all, unless they want to narrow

3      it, but there are three different pictures.

4              The Reynolds and Wien due diligence are two documents

5      so that one is easy.  The COBA side letter, there actually are

6      two side letters.  Again, the easiest thing is to send both

7      unless they don't want both, but I agree with Mr. Bell

8      clarification is necessary.

9              The only question I think is do we do it tonight,

10     which would probably take five to ten minutes, or do we sort of

11     let them go home and do it the morning.  The advantage of doing

12     it tonight is we could have everything for them first thing in

13     the morning, particularly if the phone calls mean the wiretap

14     calls.  And there I think I would say, do you want -- it's

15     three choices, do you want the phone charts, do you want the

16     phone records that underlie it, do you want the wiretap calls,

17     and in particular do you want all of them, and whatever they

18     say we'll go with.

19             THE COURT:  So what do you want me to ask them in

20     terms of phone calls?

21             MR. SCHECHTMAN:  I think I'd say that there's some

22     ambiguity there, and are they -- do they want simply the phone

23     summary charts, do they want the underlying phone records that

24     those charts were based on, or do they want some or all of the

25     wiretaps?  And let them check the box, and then see where we're

1    at.

2              THE COURT:  The summary charts aren't really --

3              MR. BELL:  They are in evidence, so I think it would

4    make sense to make that available.

5              And we're content to actually have your Honor send all

6    of this back by note so that they can get something to us and

7    we'll know, and then I think send them home.

8              THE COURT:  All right.  Should we perhaps let them

9    know also in that note that we're going to dismiss you soon,

10   but before we dismiss you we would like to clarify, so they're

11   not thinking that we ignored their first request and making

12   them stay here?

13             MR. BELL:  Yes, please.

14             THE COURT:  So we will type up or write something

15   quickly and send that to the jurors.  I will meet with my clerk

16   and write something and have my deputy type it up.

17             MR. SCHECHTMAN:  Would it be helpful if we tried to

18   write a note on consent?

19             THE COURT:  That's even better.  Why don't you do

20   that.

21             (Pause)

22             THE COURT:  And the other thing, I know every party

23   has at least two lawyers here today, I guess so maybe the

24   second lawyer for each party, I could address this to you, it

25   does seem while counsel are doing that, it may make sense since

1    we'll let the jury go soon, but I will hear what counsel's

2    thoughts, to let the jury know that we want them to come back

3    at 9:00 a.m. tomorrow.  It may make sense today to let them

4    know that court is going to be closed Friday, but I will hear

5    from counsel.  I don't want to do anything that is going to

6    make them feel coerced to do anything, but I also don't want to

7    kind of just ambush them if they decide at like 2:30 they want

8    to go home tomorrow and say they have to come back here on

9    Monday and they start freaking out.

10            Let me hear counsel's thoughts.

11            MR. BELL:  I think telling them makes sense for the

12   reasons that your Honor said, and as Friday looms, it may

13   become a bigger distraction.

14            MR. MAZUREK:  I agree that we should tell them today

15   about Friday.

16            THE COURT:  Counsel for Mr. Seabrook?

17            MS. LYNAUGH:  Agreed.

18            THE COURT:  So perhaps -- I guess what we'll do is

19   we'll get this note together to send to them in terms of

20   getting clarification for their request, then this other

21   information, we'll bring them out right before we dismiss them

22   and I will tell them about Friday.

23            MR. MAZUREK:  Sounds good.

24            THE COURT:  Okay.

25            MR. SCHECHTMAN:  I think we're ready, Judge.  I'll

1  hand this up to the Court.

2              THE COURT:  This seems fine.  I will read this into

3  the record.  This is the note prepared by counsel, agreed to

4  everyone, says:  The Court's intention is to honor your request

5  to go home.  Before we do, however, could you clarify your note

6  so that we can have it ready in the morning?

7              1.  Do you want all emails between anyone at Platinum

8  and anyone at COBA or some subset of those emails?  If so, what

9  subset?

10             2.  Do you want (a) the summary phone call charts, (b)

11 the actual phone records on which those charts were based, or

12 (c) some or all of the wiretap conversations?  If (c), which

13 conversations?

14             3.  There are three restaurant pictures.  I will send

15 them all to you unless you direct otherwise.

16             4.  There are two side letters.  I will send both to

17 you unless you direct otherwise.

18             5.  The summations are not evidence and therefore are

19 not available to you.

20             Again, my preference would be to have clarification

21 tonight, but I will send you home and wait for the morning if

22 you prefer that course.

23             And that's agreeable to everyone?

24             MR. BELL:  Yes.

25             MR. MAZUREK:  Yes.

1          THE COURT:  I will ask my wonderful and talented

2     deputy to mark this as Exhibit 7 and send it in to the jury.

3          MR. BELL:  Like that?

4          THE COURT:  Like that, or type it up.  I think the

5     handwriting is good.  It's not Reena Raggi quality, but it's

6     very good.

7          Before we send that in, could we make copies of that

8     before we give it to the jury?

9          (Pause)

10         THE COURT:  We'll send that in to the jury now.

11         (Pause)

12         THE COURT:  We have a note.  Counsel and the parties

13    are all here.

14         I will read this note.  Dear Judge, I will reply to

15    your points below.

16         1.  We request all emails to anyone at Platinum and

17    anyone at COBA.  We also request the letters from Reynolds and

18    Wien from 2014 with due diligence about PPVA, specifically the

19    letters with their enumerated concerns and the follow up where

20    three quarter concerns are resolved.

21         2.  We don't want summary phone charts and phone

22    records, but we think having the binders from the government

23    would be very helpful.

24         3.  We will take all the restaurant pictures you have.

25         4.  Yes, as requested above in number one.

1              That's again talking about the emails.  I think

2       they're responding point by point to our request.

3              5.  Understood about the summary arguments, but can we

4       have a list of what the FBI found in Seabrook's home?

5              6.  Can we get the transcript, one copy sufficient, of

6       Jona Rechnitz's full testimony, including direct, cross, and

7       any redirect examination.

8              That's the request.  We'll make a copy of this.  I

9       think the jurors want to get out of here, so it may make sense

10      to make copies of that.

11             Let me find how counsel want to proceed.  It may make

12      sense to say thank you for responding to our request, bring

13      them out, tell them to go home, and then I will instruct them

14      to not read about the case or listen to anything about the case

15      or discuss this case with anyone until or unless they are all

16      assembled this the jury room together.  I will ask them to get

17      here at 9:00 a.m. tomorrow and tell them that we will assemble

18      that material for them.

19             I also tell them that, as with today, if they haven't

20      reached a verdict tomorrow, they may stop their deliberations

21      at 2:30.  If they want to go beyond that, we'll be available

22      until 5:00.  The same applies for any other day that they

23      deliberate, but the Court will be closed on Friday.

24             Any objection to that by anyone?

25             MR. BELL:  All of that sounds fine to us, your Honor.

1    We would recommend one specific addition, I don't think we're

2    alone on this, that being that, especially since this is the

3    first day of deliberations, the jurors should leave their

4    materials here, their notes, certainly the exhibits, all of

5    that other stuff.

6              THE COURT:  Yeah, I would tell them not to leave their

7    personal belongings in the jury room, but they should leave, as

8    they always left, their notebooks in the jury room as well as

9    the verdict form and the jury instruction.

10             Anything else from counsel?

11             MR. SCHECHTMAN:  No, your Honor.

12             MR. MAZUREK:  No, your Honor.

13             THE COURT:  Okay, let's bring the jury out.

14             (Jury present)

15             THE COURT:  So we received your response to our

16   request, thank you for that.  We will assemble that information

17   for you of and provide that to you tomorrow.

18             We're going to dismiss you for the day.  Let me give

19   you the instructions that I have given you before, a little bit

20   extra.  Do not read anything about this case.  If you see

21   anything in the papers or on the internet about this case, stop

22   reading.  Do not listen to anything about this case.  If you

23   hear anything about this case on the television or internet,

24   radio, stop listening.  Do not conduct any research regarding

25   any people or issues in this case.  Do not discuss this case

1    with anyone or allow anyone to discuss this with you until and

2    unless you are all assembled in the jury room together.  I will

3    ask you to get here at 9:00 a.m. tomorrow.

4            In terms of scheduling, as with today, if you haven't

5    reached a verdict, you may cease your deliberations at 2:30.

6    If you want to go beyond that, we are available to you until

7    5 o'clock.  And that applies to any day that you may

8    deliberate.  In terms of scheduling, the Court will be closed

9    on Friday, so we will not be sitting on this Friday.

10           At 9:00 a.m. you will not be coming out here, you will

11   go to the jury room.  And again, you may begin and resume --

12   you should resume your deliberations when everyone is

13   assembled, but you must not start your deliberations or resume

14   your deliberations until all of you are assembled in the jury

15   room.  Don't leave any personal items in the jury room.  You

16   should leave your notebooks in there as well as the verdict

17   form and the jury instructions.  That will be locked up and

18   safeguarded.

19           Hold on for a moment let me speak to counsel at

20   sidebar briefly.  Hold on just a second.

21           (In robing room)

22           THE COURT:  I wanted to check, did I leave anything

23   out?  Any objection to anything?  Anything else anyone wants?

24           MR. MAZUREK:  No.

25           THE COURT:  Okay, I'll let them go.  Thanks.

1          (In open court)

2          THE COURT:  Okay.  We'll see you tomorrow.  Have a

3   good evening.

4          (Jury not present)

5          THE COURT:  Again, let's give the jurors a five-minute

6   head start.

7          Is there anything else that we need to discuss?

8          Counsel, we will make copies of this note and give it

9   to counsel.  If counsel want to look at it now, you may.  Maybe

10  you can discern something from the handwriting.

11         MR. BELL:  Your Honor, we may be able to settle on

12  what it is we have to do night.

13         THE COURT:  I'll be here.  That's fine.  I'll give

14  counsel a chance to do that.

15         (Adjourned to November 9, 2017 at 9:00 a.m.)

16

17

18

19

20

21

22

23

24

25