

125 Park Avenue, 7th Floor
New York, NY 10017
Telephone (212) 655-3500
Facsimile (212) 655-3535

Henry E. Mazurek
*Partner*
Direct (212) 655-3594
Fax (646) 682-9222
hem@msf-law.com

February 7, 2019

Wanda Whitney
Sara K. Willette
United States Probation Officers
United States Probation Department
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: <u>United States v. Murray Huberfeld</u>, S2 16 Cr. 467-02 (AKH)

Dear Officer Whitney:

  We write to memorialize our objections[1] to the Probation Department's most recent version of its Presentence Investigation Report ("PSR") for Murray Huberfeld ("Huberfeld") in the above-referenced case. *See* PSR, 1/17/19, ¶¶ 38-48, 97, 103, 107. Specifically, we write to object to the alternative "Relevant Conduct" Guidelines calculation in the January 17, 2019 Huberfeld PSR, and ask the Probation Department ("Probation") to reconsider its final

---

[1] Undersigned defense counsel previously voiced these objections in two separate meetings with the Probation Department. We previously met with Probation Officer Willette in White Plains on Friday, February 1, 2019, and held a conference call with the supervising Probation Officer Wanda Whitney on February 6, 2019. This letter also incorporates herein in their entirety the filings made on behalf of Mr. Huberfeld on December 20, 2018. *See* ECF Doc. No. 273.

sentencing recommendation to the Court, which was premised, at least partly, on this erroneous "relevant conduct" application of U.S.S.G. §§ 1B1.3 and 2B1.1.

This is one of the rare cases in which both parties agree as to the relevant Guidelines calculations, but the Probation Department differs (indeed the Probation Department has taken internally different positions between two defendants for the same offense conduct, applying one Guidelines section in Mr. Seabrook's PSR, and a different section and calculation in Mr. Huberfeld's). The Probation Department's "relevant conduct" Guidelines calculation in Mr. Huberfeld's PSR is wrong and unsupported by fact or law.

Both Mr. Huberfeld and the government agree that U.S.S.G. § 2B1.1 is the applicable Guidelines section for his offense of conviction relating to the invoice fraud against Platinum. Both parties also agree that no relevant conduct enhancements should apply under this Guidelines section for the bribery-related scheme involving Norman Seabrook. As stated below, Mr. Huberfeld continues to object to any "relevant conduct" enhancement at all based on the requirements of U.S.S.G. § 1B1.3. Alternatively, both Mr. Huberfeld and the government agree that the bribery scheme, if to be considered at all under the Guidelines or as a Section 3553(a) sentencing factor, should be calculated pursuant to the application of U.S.S.G. § 2B4.1, and not Section 2B1.1. Because Section 2B4.1 includes no enhancement regarding "loss" resulting from the payment of a bribe, but rather provides for a specific offense enhancement based on unearned "benefit" to the party paying the bribe, there is no lawful theory to enhance Mr. Huberfeld's sentencing Guidelines calculation based on the $19 million loss to COBA from Platinum's failure.

More critically, the Probation Department cannot reasonably defend its inconsistent application of different Chapter 2 Guidelines sections between the two charged co-defendants:

2

Messrs. Huberfeld and Seabrook. The *same* joint offense conduct is being evaluated for each of these defendants. The Probation Department has offered no explanation for its position of applying different Guidelines sections for the same conduct.

We contend that the correct alternative Guideline for the jointly undertaken bribery-related scheme was utilized in Mr. Seabrook's PSR, which applied U.S.S.G. § 2B4.1, the commercial bribery Guideline. If this "relevant conduct" is considered at all, it must be under this Guidelines section, and not Section 2B1.1.

As we establish below, the law is clear. Where "relevant conduct" is of a different type from the convicted conduct, the applicable Chapter 2 Guidelines section for determining "relevant conduct" is the most specific Guidelines section applicable to that crime. Here, the two different types of offense conduct being considered are general fraud, which is the offense conduct, and commercial bribery, which is the alleged relevant conduct. Because two different types of crimes are being evaluated between the convicted conduct and "relevant conduct," two different Chapter 2 Guidelines sections must be applied, and a "grouping" analysis must be considered. If the different "relevant conduct" does not "group" with the offense conduct for the count of conviction, no relevant conduct enhancement is allowed under U.S.S.G. § 1B1.3. *See* Section 1B1.3(a)(2) (relevant conduct can be considered "*solely* with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts" (emphasis supplied)), and comment. n. 5 ("Subsection (a)(2) merely incorporates by reference the types of offenses set forth in § 3D1.2(d); thus, [ ], multiple counts of conviction are not required for subsection (a)(2) to apply.").

In this case, because Section 2B4.1, applicable to the "relevant conduct" of commercial bribery, enhances the Guidelines score based on unearned benefit and not loss, while Section

2B1.1, applicable to the invoice-fraud convicted conduct, enhances the score based on loss and not benefit, these provisions simply do not aggregate for purposes of "relevant conduct." They involve different Guidelines sections that apply wholly different measures for determining a final offense level score. Under U.S.S.G. § 1B1.3(a)(2), these different types of offenses could not be combined under a single Guidelines calculation. *See e.g., United States v. Dawson,* 1 F.3d 457, 464 (7th Cir. 1993) (holding that it was improper to employ the Guidelines' multi-count analysis for conduct that is not itself an offense of conviction, unless the conduct can be aggregated with the offense of conviction under § 3D1.2(d)).

The law is also clear that procedural error is committed where a sentencing recommendation or determination is made in response to erroneous Guidelines calculations. For these reasons, we respectfully ask the Probation Department to correct the Guidelines calculation in Mr. Huberfeld's PSR, and in light of those changes, re-evaluate its final sentencing recommendation to the Court.

> **A. Mr. Huberfeld Objects to a Finding of "Relevant Conduct" to Calculate His Sentencing Guidelines Score, But if the Court Were to Consider "Relevant Conduct," the Most Specific Guidelines Section Applicable to the Jointly Conducted Acts of Commercial Bribery Relating to Norman Seabrook – Section 2B4.1 – Should Be Applied to the Relevant Conduct Calculation Under U.S.S.G. § 1B1.3**

In Huberfeld's 1/17/19 PSR, the Probation Department, for the first time, introduced an alternative, or "relevant conduct" calculation for the joint conduct and alleged losses arising from the bribery arrangement with Mr. Seabrook. Seabrook's decision to invest COBA monies into the Platinum funds, and the alleged resulting losses, is an entirely different offense, and different type of conduct, from the conduct to which Mr. Huberfeld pled guilty. However, rather than utilizing the Guidelines Chapter 2 section applicable to commercial bribery (U.S.S.G. § 2B4.1)

4

in determining "relevant conduct" in Huberfeld's PSR, Probation tried to stuff this different crime and offense conduct in the same section – U.S.S.G. § 2B1.1 – that it applied for Huberfeld's offense of conviction, involving a separate invoice fraud against Platinum. Huberfeld PSR, 1/17/19, ¶ 40.

For the reasons that follow, the application of U.S.S.G. § 2B1.1 to the alleged "relevant conduct" of a joint bribery scheme with Norman Seabrook is erroneous as a matter of law.

1. No Relevant Conduct Enhancement is Applicable for Bribery Under U.S.S.G. § 1B1.3

As an initial matter, Mr. Huberfeld objects to any Guidelines enhancement under U.S.S.G. § 1B1.3. Mr. Huberfeld first explained his position in this regard in response to the Court's request for briefing last year. Mr. Huberfeld submitted a detailed memorandum of law and exhibits on December 20, 2018. *See* ECF Doc. No. 273, Exhibits 1-11.

Any "relevant conduct" enhancement requires specific findings that "jointly undertaken criminal activity . . . occur[ ] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(B). Since any allegations of Huberfeld's participation in a conspiracy to commit bribery, or aiding and abetting honest services fraud by Norman Seabrook, arise out of completely different conduct outside the commission of the invoice fraud against Platinum, or the preparation of that offense, or any attempt to avoid that crime's detection, it simply cannot be considered "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(B). *See United States v. Wernick*, 691 F.3d 108, 114-15 (2d Cir. 2012) (district court erred in finding that conduct which "did not 'occur[ ] during the commission of' or 'in preparation for' the convicted crimes" was "relevant conduct" under U.S.S.G. § 1B1.3, explaining that "[t]o qualify as

5

'relevant conduct', the conduct must occur in the course of commission of the offense of conviction") (quoting U.S.S.G. § 1B1.3)).

Murray Huberfeld did not "jointly undertake" the commission of the offense of conviction, *i.e.,* the invoice fraud against Platinum, with Norman Seabrook. Indeed, there is not even an allegation by the government that Seabrook agreed to, or was even aware of, Huberfeld's decision to submit a fraudulent invoice to Platinum for payment to Rechnitz. This conduct was totally separate from any attempts to bribe Seabrook to convince him to use his influence to commit COBA's investment in Platinum, which the PSR considers the "relevant conduct." Indeed, at its worst, the crime to which Mr. Huberfeld pleaded guilty, enabled Huberfeld to fool Platinum Partners to pay Rechnitz, rather than Huberfeld having to use his own money. Bribery of Seabrook did not take place in preparation for in the commission of the invoice fraud against Platinum. While this fraud might have generated the money to pay Seabrook, the bribery did not take place to help Huberfeld carry out the invoice fraud against Platinum.[2] Because the COBA investment scheme did not take place "during the commission of

---

[2] The strength of this argument is crystallized when one considers flipping the count of conviction with the alleged relevant conduct here. If Huberfeld's count of conviction were bribery, or honest services fraud against COBA, and the question was raised of whether the Platinum invoice fraud was "relevant conduct" to the bribery crime, the answer is clear. Under this scenario, the invoice fraud was clearly committed during the commission of the bribery and in preparation of that crime. However, the reverse is simply not true. Bribery was not committed to help complete the invoice fraud. Nor did Huberfeld join in a bribery conspiracy as a means to commit fraud against Platinum. *See, e.g., Wernick*, 691 F.3d at 116 ("That the acts with the [offense of conviction] may have been relevant (as preparation) to [the potential 'relevant conduct'] does not make the converse true, as the [potential 'relevant conduct'] played no role, as preparation or otherwise, in the offense of conviction."). Indeed, this is an absurd statement. The proper analysis of "relevant conduct" is the determination of what actions, joint or otherwise, were taken by a defendant to commit the crime of conviction. Here, Huberfeld acted alone to deceive Platinum to obtain $60,000, and no additional course of conduct or pattern of activity occurred in preparation of that fraud and no other criminal conduct occurred during its commission.

the offense of conviction," or in "preparation for that offense," or "to avoid detection" of it, it cannot be "relevant conduct" under U.S.S.G. § 1B1.3. It is simply additional, unrelated conduct that could only be considered by the Court under 18 U.S.C. § 3553(a).

2. If a Relevant Conduct Enhancement is Considered, It Must Be Calculated Under the Most Specific Chapter Two Guideline Section Applicable to the Relevant Conduct – In This Case, Section 2B4.1

Even if the Probation Department believes the sentencing Court may consider the Seabrook-related bribery conduct as "relevant conduct" under U.S.S.G. § 1B1.3, it applied the wrong Guidelines section under Chapter 2. The relevant Chapter 2 Guidelines section for conspiracy to commit private bribery, or honest services fraud, is Section 2B4.1, not the general fraud section under 2B1.1. *See* U.S.S.G. § 2B1.1(c)(3) and Application Note 17 (where offense conduct more aptly covered by a Guideline within Chapter 2 other than § 2B1.1, the more specific Guideline should be used); *see also* Gov.'s Response to the Court's Request for Briefing with respect to Murray Huberfeld, ECF Doc. No. 274, p. 11, n. 3 (collecting cases supporting the use of U.S.S.G. § 2B4.1 for conduct involving private sector honest services wire fraud where the fraud "more closely resembled a fraud achieved through bribery than straight fraud") (hereinafter "Gov's Response").

Section 2B4.1 does not contain an enhancement for "loss" as defined in U.S.S.G. § 2B1.1. It contains an enhancement for the "benefit conferred" by COBA on Platinum, "which in this case would be the hundreds of thousands of dollars of fees Platinum generated by the bribery-induced investment." *Id.*, Gov's Response, p. 12. However, even this measure overstates the "benefit conferred" because Platinum was not distributing management fees at this time. Fees were being re-invested in the Fund. The COBA investment, therefore, generated no personal profit to any members of the management of Platinum.

7

The government already informed the Court on December 20, 2018 that, with respect to Defendant Huberfeld, because the appropriate Guideline for the bribery scheme is Section 2B4.1, rather than Section 2B1.1, "even if the Court considers the bribery arrangement and resulting loss to COBA as relevant conduct, no Guidelines enhancement pursuant to Section 1B1.3 or 2B4.1 would be warranted." *Id.,* Gov's Response, p. 12.

Paradoxically, Probation also has already agreed with the government that the bribery scheme conduct should be evaluated for Guidelines purposes under Section 2B4.1, and **not** Section 2B1.1. *See* PSR of Norman Seabrook. It calculated Seabrook's Guidelines for the very same bribery scheme based on the commercial bribery Guideline at Section 2B4.1 and enhanced that Guideline based on the management fees the bribery-induced investment would have generated – **not** the $19 million loss to COBA based on the ultimate failure of the Platinum fund. Therefore, the same Probation Department office has now recommended to the same sentencing Court two different Guidelines sections for the *same* offense conduct. This inconsistent position cannot be sustained, because the relevant Chapter 2 Guidelines section is determined by reference to the conduct committed, not the offender who is alleged to have committed it. In essence, the Probation Department is endorsing a higher Guidelines enhancement ($19 million) for Huberfeld than Seabrook – for the very same scheme or jointly conducted activity – based not on the alleged conduct, but on the cryptic comment that Huberfeld is different than Seabrook. This is a basic misreading of the Guidelines – Chapter 2 determinations are conduct-based, not offender-based like Chapter 4.

The problem here apparently stems from the Probation Department's attempt to fit a square peg in a round hole. There are two different sets of crimes at issue here, and they simply do not aggregate under the "relevant conduct" section. *See* U.S.S.G. § 1B1.3(a)(2) (stating that

8

when different Guidelines Chapter 2 sections apply to the same course of conduct, "relevant conduct" applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts"). As explained by the government in its December 20, 2018 submission to the Court, "Section 2B4.1 does not contain an enhancement for loss. Instead, it contains an enhancement for the "'benefit conferred' by COBA on Platinum." Gov's Response, ECF Doc. No. 274, pp. 11-12. This is critical to any analysis under Section 1B1.3. The harm measured under Sections 2B1.1 and 2B4.1 are absolutely different: (1) 2B1.1 measures harm by an enhancement for "loss" suffered by the victim; and (2) 2B4.1 measures harm by the unearned "benefit conferred" to the person making the bribe. These two measures represent different money or property calculations and cannot simply be aggregated under the Section 2B1.1 loss table. *See e.g., United States v. Napoli*, 179 F.3d 1, 11 (2d Cir. 1999) (holding that fraud and money laundering offenses could not be aggregated because while the offense level for fraud is based primarily on the amount of money involved, the offense level for money laundering is based instead "primarily on the base offense level, which reflects society's disapprobation of the activity"); *see also United States v. Keen,* 676 F.3d 981, 997 (11th Cir. 2012) and *United States v. Seligsohn*, 981 F.2d 1418 (3d Cir. 1992) (superseded by statute on other grounds) (holding that fraud and bribery offenses should not be grouped because of the different measures of enhancements applied by the Guidelines for these different crimes).

Thus, because the offense of conviction, invoice fraud against Platinum, and the alleged "relevant conduct" involving a bribery scheme with Seabrook require the application of two different Chapter 2 Guidelines sections (§§ 2B1.1, 2B4.1), and these sections apply very different enhancement measures, the Probation Department cannot simply aggregate "losses" to Platinum ($60,000) and COBA ($19 million) to Section 2B1.1 under a "relevant conduct"

9

analysis. *See Dawson*, 1 F.3d at 464 (interpreting Section 1B1.3(a)(2) to refer to only those acts which allow for grouping and aggregating harm based on comparable quantities, such as drugs or loss of money or property); *cf., United States v. Fitzgerald*, 232 F.3d 315, 320 (2d Cir. 2000) (affirming "relevant conduct" determinations for tax evasion, fraud, and conversion because all offenses refer to same loss calculations as principle sentencing enhancement factor and "unity of the offense tables for tax evasion, fraud, and conversion lead[ ] us to conclude that they are offenses of the same general type").

While Mr. Huberfeld continues to assert that no relevant conduct is applicable here under U.S.S.G. § 1B1.3, even if it were to be a consideration for the Court, the Guidelines section to be applied is Section 2B4.1, and not 2B1.1. Under no circumstance is the loss to COBA of its $19 million investment in Platinum a relevant Guidelines calculation for Huberfeld's offense of conviction.

For all these reasons, we respectfully request that Probation strike these "relevant conduct" paragraphs from Huberfeld's PSR. (*See* Huberfeld PSR, ¶¶ 38-48, 97, 103, 107.)

In the alternative, if Probation insists on an alternative calculation of the Guidelines to account for the bribery-related conduct with Seabrook, it should apply the same Guidelines section used in co-defendant Seabrook's PSR for the bribery scheme, *i.e.,* U.S.S.G. § 2B4.1. This calculation would result in the following Guidelines score for Mr. Huberfeld: Base offense level is 8; a 14-level enhancement for intended benefit of more than $550,000 but less than $1,500,000; and a 3-level reduction for acceptance of responsibility. In Criminal History Category I, this results in a total offense level of 19, or 30-37 months (16 to 20 months less than the erroneous relevant conduct offense level under Section 2B1.1).

**B. Because the Probation Department Used an Erroneous "Relevant Conduct" Guidelines Calculation Resulting in a Range of 46-57 Months in Determining a Final Sentencing Recommendation, It Must Reconsider its Recommendation Based on the Correct "Alternative" Guidelines Range of 30-37 Months**

Once the Probation Department corrects Huberfeld's PSR to reflect the appropriate bribery-related Guidelines score, it must reconsider its final sentencing recommendation to the Court. While Probation concluded that, as per the plea agreement, the correct Guidelines score is offense level 10, which corresponds to a resulting Guidelines score in Zone B of the Guidelines and a 6-12 months Guidelines range, it also determined that the Court could consider an alternative "relevant conduct" Guidelines score of 23, or 46-57 months under U.S.S.G. § 2B1.1. Based on these Guidelines parameters, Probation recommended an upward variance to 24 months in light of the serious offense conduct related to the bribery scheme, which it erroneously scored under the Guidelines. Based on this legally incorrect relevant conduct calculation, Probation believed that a sentence within the Guidelines range of 6-12 months was too lenient. It, therefore, recommended an upward variance of two-times the upper end of the Guidelines range that applies to Mr. Huberfeld's count of conviction. Under sentencing law, this is procedural error and Probation must re-evaluate its Recommendation using lawful and accurate Guidelines calculations for any "relevant conduct" analysis.

As explained in detail above, the appropriate "relevant conduct" calculation, to the extent it applies at all (Mr. Huberfeld continues to voice his objection), results in a total offense level of 19, and a Guidelines range of 30-37 months using Section 2B4.1. Probation cannot conclude that the same level of upward variance is reasonable if the "alternative" Guidelines "starting point" or benchmark were 30-37 months, and not 46-57 months. To think otherwise, would suggest that the Guidelines were irrelevant in the Probation Department's decision. Of course,

Section 3553(a) and related case law require the sentencing Court to consider the Guidelines as a benchmark for a reasonable sentence and as a mandatory sentencing factor. Therefore, Probation should now reconsider its sentencing recommendation based on a correct Guidelines computation, including any "relevant conduct" score.

It is clear that a sentencing recommendation or determination based on erroneous Guidelines calculations is procedural error. The Second Circuit has held that "an incorrect calculation of the applicable Guidelines range will taint not only a Guidelines sentence, if one is imposed, but also a non-Guidelines sentence, which may have been explicitly selected with what was thought to be the applicable Guidelines range as a frame of reference." *United States v. Fagans*, 406 F.3d 138, 141 (2d Cir. 2005); *see United States v. Dorvee*, 616 F.3d 174, 181–82 (2d Cir. 2010). Put another way, a defendant does not receive the full benefit intended by the Court for the non-Guidelines sentencing factors where the court's "frame of reference," *e.g.* its "starting point" under the Guidelines, is incorrect. "If the district court miscalculates the typical sentence at the outset, it cannot properly account for atypical factors and we, in turn, cannot be sure that the court has adequately considered the § 3553(a) factors." *Dorvee,* 616 F.3d at 182 (finding procedural error), citing *Gall v. United States,* 552 U.S. 38, 51 (2007); *see Molina–Martinez v. United States*, 136 S.Ct. 1338, 1349 (2016) (observing that "a defendant sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under the correct range" and "[t]hat probability is all that is needed to establish an effect on substantial rights").

### C. A Downward Departure or Variance is Appropriate for Mr. Huberfeld's Extraordinary Acceptance of Responsibility

Finally, we also respectfully request that Probation reconsider a downward variance or departure based on Mr. Huberfeld's extraordinary acceptance of responsibility by paying COBA $4 million prior to sentencing and committing to pay an additional $3 million. Even the prosecutors in this case suggest that the Court should consider this conduct as a legal ground for downward departure under U.S.S.G. §5K2.0. *See* Gov's Response, ECF Doc. No. 274, p. 22 (citing *United States v. Kim*, 364 F.3d 1235, 1238 (11th Cir. 2004) (holding that "extraordinary restitution, whether paid before or after adjudication of guilt, may, in the unusual case, support a departure from the guidelines")). The government informed the Court already that: "any effort by Huberfeld to moot difficult restitution litigation by voluntarily compensating COBA should be considered by the Court as a mitigating circumstance, whether as a departure or pursuant to 18 U.S.C. § 3553, to the extent such payments reflect true acceptance of responsibility and post-arrest rehabilitation." *Id.,* Gov's Response, p. 22.

In short, even if Probation believes an upward variance is justified by the offense conduct here, a competing and equally well justified downward variance should be applied based on Mr. Huberfeld's extraordinary acceptance of responsibility, in a case where the Probation Department itself believes the only legally applicable restitution based on the conduct of conviction was $60,000 due to Platinum Partners. *See* Huberfeld PSR, 1/17/19, ¶ 109, p. 20, and Recommendation, p. 23. Instead of accepting this legal position, Mr. Huberfeld has designated $7 million to COBA, of which $4 million is already paid. Under any analysis, this is an extraordinary and unprecedented action of post-conduct rehabilitation.

## Conclusion

For all these reasons, we ask that the Probation Department re-consider its recommendation and agree with the parties that a sentence in Zone B of the Guidelines in the range of 6-12 months is reasonable under a consideration of all the sentencing factors, and is "sufficient, but not greater than necessary" to serve federal sentencing purposes. 18 U.S.C. § 3553(a).

        Respectfully Yours,

        Henry E. Mazurek
        Evan L. Lipton
        Meister Seelig & Fein LLP
        125 Park Avenue, Suite 700
        New York, New York 10017
        hem@msf-law.com
        212-655-3500

        Alan S. Futerfas
        565 Fifth Avenue, 7th Floor
        New York, New York 10016
        asfuterfas@futerfaslaw.com
        212-684-8400

        *Counsel for Defendant Murray Huberfeld*

cc:     Government Counsel (by ECF)

       Hon. Alvin K. Hellerstein (by ECF)
       United States District Judge